COUNTY BOARD OF EDUCATION FOR UNORGANIZED TERRITORY OF ST. LOUIS COUNTY v. WALTER H. BORGEN AND OTHERS.[1]

November 9, 1934.

No. 30,273.

[1]Reported in 257 N. W. 92.

*Harry H. Peterson,* Attorney General, *Frederic A. Pike,* Deputy Attorney General, and *David J. Erickson,* Assistant Attorney General, for appellant Harry H. Peterson, Attorney General.

*Thomas J. Naylor,* County Attorney, for appellant Walter H. Borgen, County Auditor.

*Charles E. Adams,* for respondent.

*JULIUS J. OLSON, Justice.*

Appeal from a declaratory judgment entered in the court below granting to petitioner the relief prayed for.

The proceeding was brought by petitioner under the uniform declaratory judgments act, L. 1933, c. 286, Mason Minn. St. 1934 Supp. §§ 9455-1 to 9455-16. The petition sets forth that plaintiff is a duly established and existing governmental agency created and existing under and by virtue of 1 Mason Minn. St. 1927, §§ 2850 to 2870-1, both inclusive, as amended by L. 1933, c. 431, Mason Minn. St. 1934 Supp. §§ 2867, 2867-1, and Ex. Sess. L. 1933-1934, c. 45, Mason Minn. St. 1934 Supp. §§ 2867, 2867-1; that the unorganized territory of St. Louis county, included within the boundaries of petitioner's jurisdiction, had and still has an assessed valuation of $3,000,000 and that the area comprised within the limits of petitioner is 3,500 square miles. Under the provisions of said L. 1933, c. 431, it is said that petitioner has duly issued and sold to the state of Minnesota certain bonds; that under and by virtue of said Ex. Sess. L. 1933-1934, c. 45, petitioner claims to have the right and authority to issue and sell additional bonds to the United States for the purpose of constructing and improving school buildings; that in that behalf petitioner has made application to the public works administrator of the federal government prior to January 1, 1934, to issue and sell the bonds of the district to the United States

in an amount not exceeding 12½ per cent of the assessed valuation of all the taxable property within petitioner's territorial boundaries and that no vote of its electors has been had in respect of such bond issue; that the public works administrator has approved applications made by petitioner in two separate allotments, one for $122,000 and another in the sum of $56,000, and that said approvals and allotments of funds are pending and in full force and effect; that petitioner is ready to proceed with the undertaking upon which said petitions are founded and has employed architects, adopted resolutions authorizing the issuance of bonds in amount of $98,000 under the first application and in the sum of $42,500 under the second application; that petitioner is about to proceed to award a contract for the erection of one of the school buildings contemplated under the first application and desires to proceed with the letting of further contracts of a similar nature. In order to effectuate and make possible what the district has sought to accomplish, it is necessary to have a judicial construction of the constitutionality of Ex. Sess. L. 1933-1934, c. 45, it being averred that counsel for the federal government who have in hand the examination of the proceedings here involved have expressed doubt as to the constitutionality of said last mentioned chapter. It is alleged that L. 1933, c. 339, declares the existence of a severe financial and economic depression and that the same has existed over a long period of time, resulting in unemployment and almost complete lack of credit to the general population within the district aforesaid. The last paragraph of the petition reads as follows:

"That to settle the aforesaid controversy regarding the constitutionality of said chapter 45, *supra,* and the legality of said proceedings so far taken thereunder by your petitioner, it is necessary and highly desirable that the court declare the rights and power of your petitioner to act under said law, and determine that said chapter 45, *supra,* is constitutional and that the proceedings so far taken and about to be taken thereunder .are legal and valid in all respects.

"That the questions involved in this proceeding are one of common interest to all the taxpayers within the unorganized territory

of St. Louis county, Minnesota. That in addition to the members of said county board of education for said unorganized territory for said county, the county auditor of said county, the attorney general of the state of Minnesota, and all of said taxpayers, many thousands in number, are actually interested in the determination of the constitutionality and legal questions hereinbefore in this petition referred to. That it is impracticable to bring them all before the court in this proceeding, but, as provided by statute, one or more may on application, upon order of this court, appear and defend for the benefit of all."

The defendants are Walter H. Borgen, as county auditor of St. Louis county, and the Honorable Harry H. Peterson, as attorney general of Minnesota. Each of said defendants duly answered separately, and as the answer is the same as to both it will be sufficient for our purpose to quote only one. Defendant Borgen's answer is as follows:

"The defendant, Walter H. Borgen, county auditor of St. Louis county, Minnesota, for his separate answer to the petition herein admits the allegations thereof.

"Wherefore, this defendant prays that the court grant the petitioner's prayer for relief; and for such other and further declaration and decree as may be proper in the premises."

The court made findings in conformity with the allegations of the petition and ordered judgment granting the relief sought. This appeal has been brought by defendants, appellants here, to this court for review.

Brief of counsel for each respective appellant seeks to have this court affirm the lower court. Counsel for petitioner in his brief on pages 6 and 7 thereof makes the following statement:

"The trial court heard and decided the questions involved, on the admissions in the pleadings and on facts of common knowledge of which the court took judicial notice. In its conclusions and memorandum the trial court found that the questions involved in this proceeding are of public importance and not free from doubt.

"Notwithstanding the favorable decision of the trial court in holding chapter 45 constitutional, and authority for the county board of education to issue its bonds for the purposes and within the limits specified in the act, it has been deemed advisable to obtain the review of the judgment of the trial court to satisfy bond and government counsel.

"The matter comes before this court on the sufficiency of the findings and conclusions to justify the declaratory judgment appealed from. There are no assignments of error."

Each appellant, contrary to what is customarily the case, seeks to sustain the judgment from which the appeal was taken. It will thus be seen that there is before us an appeal by parties who were not aggrieved by the decision below, and this court is urged by them to affirm what was there accomplished. Obviously, then, the case is one where each appellant is satisfied with what was accomplished in the lower court, and as such no other relief is here sought from the judgment appealed from except that the same be sustained. We are asked to approve what was done below by those who were the only adverse parties to this proceeding. No taxpayer has appeared, nor has the court required any taxpayer to be summoned or to appear in the case.

The declaratory judgments act is comparatively new in this state, but it has been in force in many of the states of this Union over a very long period of time. Its history runs back some 400 years in Scotland and ever since 1852 in England. See Borchard, Declaratory Judgments, appendix under title "History" p. 631, et seq. To determine whether or not jurisdiction should be assumed and exercised to accomplish the result sought under the circumstances here existing, it is necessary for us to turn to decisions of other jurisdictions construing this or similar acts to the end that we may be guided thereby in finding the proper solution. As far as our research goes, it seems to be the opinion of courts everywhere that there must be a controversy between contending forces before the court may take and exercise jurisdiction in any case. In Borchard, Declaratory Judgments, p. 26, the rule is stated, and this we believe to be of universal application, as follows:

"It has already been observed that an action for a declaratory judgment must exhibit all the usual conditions of an ordinary action, except that accomplished physical injury need not necessarily be alleged. It is sufficient if a dispute or controversy as to legal rights is shown, which, in the court's opinion, requires judicial determination—that is, in which the court is convinced that by adjudication a useful purpose will be served. The requisites of justiciability must be present.

"Not only must the plaintiff prove his tangible interest in obtaining a judgment, but the action must be adversary in character, that is, there must be a controversy between the plaintiff and a defendant having an interest in opposing his claim. Unless the parties have such conflicting interests, the case is likely to be characterized as one for an advisory opinion, and the controversy as academic, a mere difference of opinion or disagreement not involving their legal relations, and hence not justiciable."

The author cites numerous cases to sustain the text quoted. See author's notes, p. 26, *et seq.*

Particularly valuable is the Pennsylvania case of Kariher's Petition (No. 1), 284 Pa. 455, 131 A. 265, 270. In an exhaustive and most persuasive opinion written by Chief Justice Moschzisker the declaratory judgments act of that state was sustained against various constitutional objections. That act is identical with ours. A few brief quotations from that opinion will be sufficient for our purpose (284 Pa. 455, 466, 131 A. 265, 269):

"The only jurisdiction in which a declaratory judgment statute has been held unconstitutional is Michigan. There, the question arose in a case which was not a proper one for such a judgment, and the statute was held to be unconstitutional, by a divided court (see Anway v. Grand Rapids Ry. Co. 211 Mich. 592, 179 N. W. 350, 12 A. L. R. 26); but this decision has not been followed in any other state, as far as we are aware.

"The Michigan court seems to have been of the impression that proceedings under the act dealt simply with moot cases or called for only advisory opinions, not for judicial decisions; but the differ-

ence between declaratory judgments and both advisory opinions and decisions of moot cases is obvious and need not be dwelt upon in detail. A moot case is imaginary, it does not exist in fact; to decide it serves no useful purpose,—nothing is adjudicated, for nothing is affected [citing cases], whereas a declaratory judgment must always deal with a real dispute over real facts. An advisory opinion is merely a giving of advice; it is not binding [citing cases], while a declaratory judgment is a final judgment (section 1 of the act) and constitutes *res judicata:*" (citing cases).

Again, on p. 471, appears the following:

"Jurisdiction will never be assumed unless the tribunal appealed to is satisfied that an actual controversy, or the ripening seeds of one, exists between parties, all of whom are *sui juris* and before the court, and that the declaration sought will be a practical help in ending the controversy." (Citing cases.)

See also Hicks v. Greene County, 200 N. C. 73, 156 S. E. 164; Williams v. Flood, 124 Kan. 728, 262 P. 563.

This form of action, as well as every other form, necessarily requires that there be adverse interests, in other words, that there be a controversy. It is true of course that in many instances a right asserted and denied may be simply a framed case for the purpose of having a test made and determined.

"Rights are often asserted and denied for the purpose of making a test case, and the agreed statement of facts or case stated is a common phenomenon. The court must merely be alert to distinguish the fictitious or collusive suit, where only information or opinion is sought, from those in which rights are placed in issue with the purpose of a binding determination." Borchard, Declaratory Judgments, p. 34, and cases cited.

While not directly in point, yet of value here, is the case of Self-Insurer's Assn. v. State Industrial Comm. 224 N. Y. 13, 119 N. E. 1027, wherein the court held that only such questions were intended for legal solution as represented actual controversies with adverse parties litigant. A mere question submitted by the industrial com-

mission seeking enlightenment with respect to its powers or the like could not properly be brought before the court for decision. Judge Cardozo stated that he considered such a nonjudicial duty which the legislature had no power to impose upon the court. In the Kentucky case, Kelly v. Jackson, 206 Ky. 815, 268 S. W. 539, it was held that courts are not provided for the settlement of arguments or mere differences of opinion, but rather to determine and decide actual controversies involving legal rights. Numerous cases have been decided, so many in fact that this opinion would be extended beyond reasonable limits were we to discuss all or any great number of them. Perhaps it is sufficient here to quote Borchard, Declaratory Judgments, appendix, p. 634:

"The 1,200 American decisions have established that the proceeding must be adversary, all interested parties must be cited, the issue must be real, the question practical and not academic, and the decision must finally settle and determine the controversy. It enables disputes arising out of written instruments, or otherwise, to be adjudicated without requiring a destruction of the *status quo* and of the social and economic fabric. Experience has shown that a dispute can be adjudicated as effectively, if not more usefully, before the *status quo* has been destroyed."

It necessarily follows from what has been stated that the instant case utterly lacks the essential element of controversy—that there is wholly lacking an adverse party. Any opinion that might be written could only be an advisory one. As such it would be without force. Such decision would not be *res judicata.*

It appearing that there was no controversy in the court below any more than there has been here, it necessarily follows that the judgment appealed from must be reversed.

So ordered.