BENJAMIN SEIZ v. CITIZENS PURE ICE COMPANY. STATE OF MINNESOTA, INTERVENER.[1]

March 15, 1940.

No. 32,437.

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, and *Kent C. van den Berg,* Special Assistant Attorney General, for the State.

*Nichols, Mullin & Farnand,* for plaintiff-respondent.

[1]Reported in 290 N. W. 802.

PETERSON, JUSTICE.

This is an action for a declaratory judgment. The complaint alleges the enactment of Ex. Sess. L. 1936, c. 2 (3 Mason Minn. St. 1938 Supp. c. 23AA), establishing a state unemployment compensation system conforming to the criteria of the federal social security act (49 St. 620, 42 USCA, c. 7) and the amendment of the 1936 state law by L. 1939, c. 443. The provisions of the statutes shall be stated only so far as here pertinent.

The 1936 statute establishing the state unemployment compensation system declares that it was enacted under the police power of the state "for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own" to alleviate economic insecurity due to unemployment as a serious menace to the health, morals, and welfare of the people, to encourage employers to stabilize employment, and by providing benefits to the unemployed to maintain purchasing power and limit the serious social consequences of poor relief assistance. The act establishes the state unemployment compensation fund (§ 3), which is derived from taxes exacted of employers subject to the act computed on a basis of employment and pay rolls. The act is administered by the unemployment compensation commission through which the fund is disbursed. A comprehensive plan is set up for the payment from the fund of unemployment benefits to workers employed within the state by designated classes of employers. The benefits are payable to the employes covered by the act during unemployment upon prescribed conditions and at prescribed rates. See Bielke v. American Crystal Sugar Co. 206 Minn. 308, 288 N. W. 584. The benefits are not paid to the employe by his employer. Benefits can be obtained only by complying with the prescribed procedure, which requires the filing with the commission of a claim for benefits by the employe, investigation thereof by a referee with right of review and appeal to the courts. Section 8(f) of the act provides that "judicial review thereof [a decision by the commission] shall be permitted only after any party claiming to be

aggrieved thereby has exhausted his remedies before the commission, as provided by this Act."

The employe has nothing to do with the collection of the tax from the employer. Payment of the tax is enforced against the employer by civil action in the name of the commission. § 14(b).

Although the federal social security law applies only to employers of eight or more employes, our 1936 statute made no such distinction.

L. 1939, c. 443, § 1H(6)(k) (3 Mason Minn. St. 1940 Supp. § 4337-22H[6][k]), which amended the 1936 act, among other things excludes all employers of less than eight employes where the services of all of such employer's employes are performed outside of the corporate limits of a city, village, or borough of 10,000 or more population as determined by the last United States census.

Plaintiff alleges that he has been for many years, was at the time of the commencement of this action, and expected to continue to be employed as an engineer by defendant in its ice manufacturing plant in the city of Red Wing; that the defendant employs less than eight persons; that under the 1936 law plaintiff was entitled to unemployment benefits in the event of unemployment, which he actually received in 1938; that Red Wing is a city of less than 10,000 population according to the last census; that the effect of the 1939 amendatory act is to exclude plaintiff from unemployment benefits and to exempt defendant from obligation to pay unemployment taxes, thereby depriving plaintiff of rights which he enjoyed and relieving defendant of obligations under the 1936 act; and "that at times during the years to come the said plaintiff, whose life work and occupation is that of an employe, as defined in said act, will be unemployed and will be denied the benefits of said act if his prayer for relief is not granted."

It is alleged that plaintiff asserts and maintains that the 1939 amendatory law is unconstitutional as class legislation violative of the provisions of the state and federal constitutions; that defendant asserts and maintains that the act is constitutional; and

that "various questions" have arisen and exist between plaintiff and defendant as to their respective rights, status, and legal relations with respect to unemployment compensation with resulting "uncertainty and insecurity" on the part of each of them regarding such matters. The prayer is for judgment determining "the rights, status, and legal relations of plaintiff and defendant under the Unemployment Compensation Act, and removing the uncertainty and insecurity now existing with respect thereto, declaring, adjudging and decreeing that said subsection H-(6)(k), Section 1, Chapter 443, Session Laws of Minnesota, for 1939, is invalid, void and unconstitutional under the Constitution of the State of Minnesota and of the United States of America."

The answer in effect admitted all the allegations of the complaint except that the 1939 amendatory act was unconstitutional. The attorney general intervened on behalf of the state, adopting the allegations of the answer. Plaintiff's motion on the pleadings for judgment was granted.

Unemployment benefits cannot be recovered directly from the employer. Plaintiff makes no such claim. He asserts no right, present or future, against the defendant. He claims a right in the future to unemployment benefits from the fund which is contingent upon his becoming unemployed. In the final analysis, the complaint demands an advisory opinion as to plaintiff's future right to unemployment benefits in the contingency of his future unemployment and to defendant's liability to pay the tax.

The case was argued and submitted before we had the record and appellant's printed brief. The presentation was upon the assumption that the case presented a justiciable question concerning the constitutionality of the 1939 amendatory act. The argument was confined to the constitutional questions without a consideration of the right of the parties to maintain the action under the declaratory judgments statute. Before there can be any consideration of the constitutional questions it must appear that we have a case before us for the exercise of the judicial function.

Proceedings for a declaratory judgment must be based on an actual controversy. The controversy must be justiciable in the sense that it involves definite and concrete assertions of right and the contest thereof touching the legal relations of parties having adverse interests in the matter with respect to which the declaration is sought, and must admit of specific relief by a decree or judgment of a specific character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Mere differences of opinion with respect to the rights of parties do not constitute such a controversy. This court of its own motion will reverse for want of jurisdiction of the subject matter where it appears there is no real controversy, on the grounds that there is no proper case for a declaratory judgment and the judicial function does not comprehend the giving of advisory opinions. County Board of Education v. Borgen, 192 Minn. 512, 257 N. W. 92. In the Borgen case plaintiff claimed the right under Ex. Sess. L. 1933-1934, c. 45, to issue and sell its bonds to the United States for the purpose of constructing and improving school buildings. Plans for the buildings had been prepared, allotments of funds had been obtained from the Public Works Administration, and an emergency had been declared to exist. It was necessary to sell the bonds to carry the projects through. The attorney for the federal government in charge of such matters had expressed a doubt as to the constitutionality of the statute. A declaratory judgment was sought to settle the "controversy." The county auditor of St. Louis county and the attorney general were made parties—the latter because the proceeding involved the constitutionality of a statute. The county auditor and the attorney general joined plaintiff in a prayer for judgment upholding the constitutionality of the law, which was granted by the district court. It being deemed necessary to have the decision of this court, an appeal was taken. Nowhere was the point raised that the proceedings did not involve a justiciable controversy, but we decided that question on our own motion. We held that the proceeding lacked the essential element of a real controversy between

adverse parties involving questions affecting their legal rights *inter se,* and that such a controversy was indispensable to jurisdiction, however much the parties may have differed with the government attorney in opinion as to plaintiff's right to issue and sell its bonds, and reversed the judgment.

Our decision in the Borgen case, 192 Minn. 512, 257 N. W. 92, is in accord with the rule that the existence of a justiciable controversy is essential to jurisdiction, which the appellate court will determine although the point has nowhere been raised. Heller v. Shapiro, 208 Wis. 310, 242 N. W. 174, 87 A. L. R. 1201, and note.

Here there is no controversy between the parties with respect to the act assailed and there can be none. Where the employe is entitled to benefits, his rights are against the fund only. Where the employer is liable for the tax, the liability is to the fund only. As to such matters, neither has an adverse interest against the other in the particular case.

A case by way of contrast may be helpful to emphasize what has just been said. In Aetna L. Ins. Co. v. Haworth, 300 U. S. 227, 57 S. Ct. 461, 81 L. ed. 617, 108 A. L. R. 1000, an insurance company brought a proceeding to determine its liability to its assured for disability benefits under four life policies. The assured, notwithstanding nonpayment of premiums, claimed that the policies were in effect and that he was entitled to the stipulated benefits by reason of his total and permanent disability, and made repeated and persistent demands on the insurer accordingly. The insurer denied liability and claimed that the policies had lapsed for nonpayment of premiums. Although the defendant had not threatened suit, it was held that the facts showed a real controversy in which the parties were adversary, the assured asserting the existence of rights to disability benefits against the insurer and the insurer opposing the rights claimed against it by the insured. The controversy was held to be appropriate for judicial determination for the reason that it involved a real and substantial controversy between the parties as to their respective rights, which admitted of specific relief by

judgment or decree of a conclusive character determinative of such rights, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Here plaintiff claims no right to unemployment benefits against the defendant, and the latter is not resisting such a claim for want of its assertion against him. Since neither party asserts rights against the other, there is nothing which the declaratory judgment could determine between them.

Plaintiff has no present right to unemployment benefits, nor do we know that he ever will have a right to them. Any right that he may have to benefits, even if it were determined under the 1936 law, is conditioned upon his future unemployment and proceeding to obtain them in strict conformity with the provisions of the statute. See §§ 6 and 7, as amended by L. 1939, c. 443, §§ 5 and 6. The provisions of § 8(f) that there shall be no judicial review of a claim for benefits until after a party has exhausted his remedies before the commission as required by the act in itself should be sufficient to deter us from passing on plaintiff's right to benefits now.

But, that aside, the plaintiff's claims are based on a hypothetical state of facts, which may never become real. Courts have declined to determine rights in anticipation of an event which can happen only in the future. It was not contemplated that there should be declarations upon remote contingencies or as to matters where the plaintiff's interest is merely contingent upon the happening of some event in the future. Courts will wait until the event giving rise to rights has happened so that the alleged rights have become fixed under an existing state of facts as of the time when the declaration of rights is to be made. Electric B. & S. Co. v. Securities & Exch. Comm. 303 U. S. 419, 58 S. Ct. 678, 82 L. ed. 936, 115 A. L. R. 105.

In Ashwander v. TVA, 297 U. S. 288, 56 S. Ct. 466, 472, 80 L. ed. 688, the court at the instance of the stockholders declared the validity of contract between an electric power company and a governmental authority, but declined to make a general

declaratory decree with respect to the powers and rights of such agency relating to acts which might happen in the future which were contingent on the policies and action of the governmental authority in the future and which had not taken on form of a definite and concrete character constituting an actual or threatened interference with the rights of the complainants. The court held that rights dependent on such future and contingent acts rested on a hypothetical state of facts, which did not constitute a basis for a declaratory judgment, saying [297 U. S. 289]: "The judicial power does not extend to the determination of abstract questions."

In State ex rel. La Follette v. Dammann, 220 Wis. 17, 264 N. W. 627, 629, 103 A. L. R. 1089, there was a difference of opinion between the governor and the secretary of state as to the governor's power to make certain *ad interim* appointments. The secretary of state expressed an intention not to honor the commissions or to audit and pay the salary and expense of any appointee, in consequence of which the governor claimed that it was difficult to secure suitable persons to fill vacancies. No appointments in fact had been made by the governor. The court held that declaratory relief will be granted only where there is a controversy in which a claim of right is asserted by one who has an interest in asserting it against one who has an interest in contesting it, and that the issue involved in the controversy must be ripe for judicial determination. Even though the difference of opinion between the governor and the secretary of state as to the former's powers to make the appointment was real, the court held that there was no justiciable controversy within the rule, with the comment [220 Wis. 23]: "Difference of opinion is not enough to make a justiciable controversy," and that only an appointee of the governor's could have any legal interest in an appointment to be vindicated by a declaratory judgment, saying [220 Wis. 23]: "It is also our opinion that, if the dispute between the plaintiff and the defendant may be considered as the beginning of a controversy, it is not now ripe for adjudication,

since the plaintiff has made no appointments to any of such offices and there is consequently no one who can presently assert a legally protectible interest—a right to an office or the emoluments thereof—which the court may vindicate by a declaratory judgment."

The fact that the attorney general has intervened does not make a justiciable controversy out of what was obviously not one as between the original parties. By the terms of his intervention the attorney general stands in the defendant's shoes for the obvious purpose of raising the constitutional questions. The judicial power does not extend to giving advisory opinions to the other departments of the government. The right to give such opinions being coextensive with the duty, courts will refrain from giving them, Rice v. Austin, 19 Minn. 74 (103), 18 Am. R. 330; State ex rel. County Treasurer v. Dike, 20 Minn. 314 (363), even where the request for the opinion is made under a statute which attempts to impose on the courts the duty of complying with such requests. In re Application of the Senate, 10 Minn. 56 (78). The declaratory judgments act was not intended to authorize the courts to give such opinions. We so held where the request was by the attorney general, a constitutional member of the executive department of the government. County Board of Education v. Borgen, 192 Minn. 512, 257 N. W. 92. The consequence is that there is an entire absence of jurisdiction of any subject matter for the exertion of judicial power. The proceeding must be dismissed.

Reversed with directions to dismiss the action.