**ONVOY, INC., Respondent,**

v.

**ALLETE, INC., f/k/a Minnesota Power, Inc., d/b/a Minnesota Power & Light Company, et al., Appellants.**

**No. A05–1497.**

Supreme Court of Minnesota.

Aug. 2, 2007.

---

James A. Wade, Roy J. Christensen, Johnson, Killen & Seiler, PA, Duluth, MN, for Appellant.

Eric J. Nystrom, Christopher H. Yetka, Mark H. Zitzewitz, Lindquist & Vennum, PLLP, Minneapolis, MN, for Respondent.

## OPINION

MEYER, Justice.

We are asked to resolve a dispute over whether a building lease between the parties authorizes respondent Onvoy, Inc. to run a telecommunications cable from its leased space inside appellant ALLETE, Inc.'s building to an exterior wall. We must determine if the district court erred in granting a claim for declaratory relief in favor of Onvoy, Inc. in light of a jury verdict finding that there was no breach of the terms of the lease by ALLETE. The court of appeals concluded that the district court did not err in granting declaratory relief to Onvoy. We reverse and remand.

ALLETE (formerly known as Minnesota Power and Minnesota Power & Light Company), and Onvoy (formerly known as Minnesota Equal Access Network Services (MEANS)[1]) are both involved in the telecommunications business. ALLETE and Onvoy's business relationship started over 10 years ago in February 1996 when the parties entered into a fiber optic agreement (the Fiber Lease). The Fiber Lease gave Onvoy the right to use twelve of ALLETE's fiber optic strands, which Onvoy intended to use to provide telecommunication services to third parties. Onvoy and ALLETE's fiber optic systems connected at ALLETE's General Office Building (GOB) in Duluth. In exchange for use of the fiber optic strands, Onvoy agreed to pay ALLETE for half the cost of constructing the fiber optic route and to make annual installment payments to ALLETE for 20 years.

The Fiber Lease permits Onvoy to use ALLETE's substations and offices subject to certain fees, which must be established in a separate agreement. On April 10, 1996, a month and a half after entering into the Fiber Lease, Onvoy and ALLETE entered into two separate lease agreements. The first is the Arrowhead Lease, which is not at issue in this case. The second, which is in dispute, is the General Office Building Lease (the GOB Lease), a 20–year lease that provides Onvoy with 430 square feet of office space in the basement of the GOB in Duluth "for use and occupancy as a telecommunication equipment room." The GOB Lease provides that Onvoy

> shall have the right, upon written notice to and consent of [ALLETE], which consent will not be unreasonably withheld, to allow collocation [2] of telecommunications equipment of local exchange carriers (LECs), competitive access providers (CAPs) or interexchange carriers (IXCs), in Tenant's leased space provided such collocation of telecommunications equipment is for the purpose of interconnecting Tenant's network with the network(s) of the collocated party(ies).

After entering into the GOB Lease with ALLETE, Onvoy requested permission to run cable conduit from within its leased space through the common area of the

---

1. On July 21, 2000, Onvoy merged with a subsidiary, Minnesota Equal Access Facilities Corporation (MEANFCO). Onvoy is the surviving corporation and has assumed all property rights, interests, and liabilities of MEANFCO.

2. Collocation is "the physical interconnection of lines and equipment owned and operated by different carriers typically on the premises of the major incumbent carrier." Harvey L. Zuckman, et al., 3 *Modern Communication Law* 521 (West Group Practitioner's ed.1999).

GOB to the GOB's exterior wall in order to connect Onvoy's telecommunications equipment with the telecommunications equipment of third-party telecommunications providers outside the GOB. ALLETE refused, contending that Onvoy must negotiate another agreement (and pay an additional fee) in order to run the cable from Onvoy's leased space to the exterior of the GOB.

Onvoy filed suit in June 2003, claiming breach of contract, unjust enrichment, and intentional interference with contractual relations, and seeking declaratory judgment and reformation.[3] The complaint alleges that the GOB Lease permits Onvoy to establish and operate a "point of presence" for its telecommunication equipment in Duluth and maintains that Onvoy's "point of presence" can become operational only if Onvoy is able to connect its equipment housed within the GOB to equipment of other providers outside the GOB. The complaint further alleges that ALLETE was trying to force Onvoy to pay it an "exorbitant" monthly fee for the right to connect with other providers even though the cost of installing cables for the purposes of interconnection was minimal and the expense would be borne entirely by Onvoy without any recurring expense for ALLETE or Enventis, ALLETE's subsidiary.

ALLETE brought a motion for summary judgment on Onvoy's claims, but the district court denied the motion because there were "legitimate factual disputes over intent and meaning." The case went to trial, and the claims at law and claims for equitable relief were tried together. At the conclusion of the trial, the jury answered a special verdict form that included questions on both the claims at law and Onvoy's equitable claims of reformation and unjust enrichment. On the claims at law, the jury found that ALLETE did not breach the GOB Lease with Onvoy and that Enventis intentionally interfered with the GOB Lease, but that Onvoy was not entitled to any damages because of Enventis's interference.

■ With regard to the claims for equitable relief, the jury made an advisory finding that before entering into the GOB Lease, Onvoy and ALLETE had "a valid agreement that Plaintiff Onvoy, Inc. would use the General Office Building space for the collocation of equipment in order to interconnect Plaintiff Onvoy, Inc.'s network with other telecommunications carriers' networks by running cable through the General Office Building and outside of Plaintiff Onvoy, Inc.'s leased space."[4] The jury then found that the GOB Lease failed to express the earlier agreement because of a unilateral mistake by Onvoy. The jury further found that the unilateral mistake by Onvoy was not accompanied by inequitable conduct by ALLETE.[5]

After receiving the jury verdict, the district court entered judgment for ALLETE based on the jury's answers on the claims at law (breach of contract by ALLETE and intentional interference with contrac-

3. The intentional interference with contractual relations claim is against ALLETE's subsidiary, Enventis Telecom, Inc.

4. Under Minn. R. Civ. P. 39.02, the court may use an advisory jury when trying a claim for equitable relief.

5. Reformation of a written contract requires: (1) a valid agreement between the parties expressing their real intentions; and (2) a written agreement that fails to express those intentions; (3) due to either mutual mistake of the parties or unilateral mistake by one party accompanied by fraud or inequitable conduct by the other party. *Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn. 1980).

tual relations against Enventis), and made its own factual findings on the claim for declarative relief.[6] The court found that Onvoy entered into the GOB Lease for the purpose of establishing a "point of presence" that would allow it to interconnect with other telecommunications networks. The court further found that Onvoy and ALLETE understood and agreed that Onvoy would use its space within the GOB to interconnect its network to third parties and that interconnection would require a physical connection that involved running cables into and out of Onvoy's leased space. The district court determined that Onvoy had made repeated requests to interconnect with third parties, which ALLETE had refused to grant, and that ALLETE had demanded that Onvoy or the third party enter into separate lease agreements and pay additional fees to ALLETE and Enventis. The court found that ALLETE's refusal to allow third-party collocation in Onvoy's leased space prevented Onvoy from utilizing eight of the fiber strands it had leased under the fiber lease. The court then concluded that the GOB Lease provided Onvoy with a right to run cables into its leased space from outside the GOB in order to connect Onvoy's equipment with third-party networks and that Onvoy was entitled to a right of access to facilities or conduit space sufficient to allow interconnection of telecommunications equipment without being required to enter into a separate lease agreement with ALLETE or make additional payments to ALLETE or Enventis.

After the district court entered judgment, ALLETE brought a motion for amended findings and conclusions of law, and Onvoy brought a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The court denied all of the motions. ALLETE appealed. The court of appeals affirmed the district court, and ALLETE appealed to this court. We granted review solely on the issue of "whether the district court is bound on declaratory judgment by jury findings."

We begin our analysis by considering (1) whether the jury's factual findings that are common to claims at law and claims for equitable relief are binding upon the district court when deciding claims for equitable relief, and (2) if the district court is bound by the jury's factual findings, what factual findings made by the jury are common to Onvoy's claims for both legal and equitable relief. When reviewing a declaratory judgment action, we apply the clearly erroneous standard to factual findings, *Toombs v. Daniels*, 361 N.W.2d 801, 805 (Minn.1985), and review the district court's determinations of law de novo, *see Frost–Benco Elec. Ass'n v. Minn. Pub. Utilities Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

## I.

Article I, section 4 of the Minnesota Constitution guarantees that "[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." This right to a civil jury trial applies only to claims at law. *Morton Brick & Tile Co. v. Sodergren*, 130 Minn. 252, 254, 153 N.W. 527, 528 (1915). No right to a jury trial attaches to claims for equitable relief, but the Minnesota Rules of Civil Procedure permit district courts to try claims at law and claims for equitable relief in the same

---

**6.** The district court declined to address the reformation claim because Onvoy was the prevailing party on the claim for declaratory relief. The court also did not address the unjust enrichment claim because the jury "probably found damages speculative," and "[t]o now find unjust enrichment would constitute an end-around attack on the jury's findings."

action. Minn. R. Civ. P. 18.01. To do so, a district court may empanel an advisory jury on claims for equitable relief, but findings of the advisory jury as to solely equitable claims are not binding upon the court's adjudication of those equitable claims. Minn. R. Civ. P. 39.02, 52.01; *see In re Estate of Murphy,* 269 Minn. 393, 404, 131 N.W.2d 220, 227 (1964) (noting that an advisory jury's role is "only to advise the court and its findings are merely to reinforce the court's own decision on the disputed fact—not to supplant it").

We have not previously addressed how jury findings that are common to claims at law and claims for equitable relief impact the district court's decisions on the claims for equitable relief. In the federal courts, when claims at law and claims for equitable relief turn on the same operative facts, the jury must decide the claims at law first in order to preserve the jury trial right. *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510–11, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Further, the federal courts of appeals, relying on *Beacon Theatres* and its progeny, have made it clear that when claims at law and claims for equitable relief turn on the same operative facts, the jury's findings as to the claims at law bind the district court in its determination of parallel claims for equitable relief. *See, e.g., Ag. Servs. of America, Inc. v. Nielsen,* 231 F.3d 726, 730 (10th Cir.2000) ("[W]hen a case involves both a jury trial and a bench trial, any essential factual issues which are central to both must be first tried to the jury, so that the litigants' Seventh Amendment jury trial rights are not foreclosed on common factual issues. Moreover, the court is bound by the jury's determination of factual issues common to both the legal and equitable claims." (quoting *Skinner v. Total Petroleum, Inc.,* 859 F.2d 1439, 1442–43 (10th Cir.1988))); *Snider v. Consolidation Coal Co.,* 973 F.2d 555, 559 (7th Cir.1992) ("[W]hen common

issues are simultaneously tried to both a judge and a jury, the jury's findings with respect to those common issues are binding upon the judge."); *Ward v. Texas Employment Comm'n,* 823 F.2d 907, 908–09 (5th Cir.1987) ("When a party has a right to a jury trial on an issue involved in a legal claim, the judge is of course bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim." (quoting *Lincoln v. Board of Regents,* 697 F.2d 928, 934 (11th Cir.1983))); *Garza v. City of Omaha,* 814 F.2d 553, 557 (8th Cir.1987) noting that when legal and equitable "claims are tried jointly, the [legal] theory to the jury and the [equitable] theory to the court, a jury verdict on the issue of discrimination would collaterally estop the parties with respect to that issue on the [equitable] claim" (quoting *Goodwin v. Circuit Court of St. Louis County, Mo.,* 729 F.2d 541, 549 n. 11 (8th Cir.1984)).

Additionally, several states, noting the parallels between their state systems and the federal system, have applied the reasoning of *Beacon Theatres* to cases involving both claims at law and claims for equitable relief. *See, e.g., Lee v. Aiu,* 85 Hawai'i 19, 936 P.2d 655, 666 (1997) (noting that in the context of the state right to a civil jury trial, claims at law should be decided first and the district court is bound by the jury's findings of fact when ruling on the claim for equitable relief); *Zions First Nat'l Bank v. Rocky Mountain Irrigation, Inc.,* 795 P.2d 658, 661–62 (Utah 1990) (noting that its analysis of a right to a civil jury trial under Utah's constitution was in line with the U.S. Supreme Court's analysis of the federal right to a jury trial and adopting the reasoning of *Beacon Theatres* ); *Wood v. Wood,* 166 Vt. 608, 693 A.2d 673, 675 (1997) (citing *Beacon Theatres* to support the proposition that claims at law should

be decided by the jury before the district court decides any claims for equitable relief and further concluding that when claims at law and claims for equitable relief are tried simultaneously, jury findings on common issues of fact are binding on the district court).

■■ We agree with the weight of authority on this issue and hold that factual findings that are common to both claims at law and claims for equitable relief are binding upon the district court. In making this determination, we recognize the parallels between the state and federal rights to a civil jury trial and note that these parallels support extending the reasoning of *Beacon Theatres* to our state courts. The Seventh Amendment of the United States Constitution preserves the right to a jury trial in civil actions at common law. The right to a jury trial under the Minnesota Constitution protects essentially the same jury trial rights as those provided under the federal constitution. *Compare Parsons v. Bedford*, 28 U.S. 433, 446–47, 3 Pet. 433, 7 L.Ed. 732 (1830) (determining that in the Seventh Amendment "[b]y *common law*, they meant what the constitution denominated in the third article 'law;' not merely suits, which the *common* law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized"), *with Whallon v. Bancroft*, 4 Minn. 109 (Gil. 70, 74) (1860) (stating that Article I, section 4 of the Minnesota Constitution was intended to continue, unimpaired and inviolate, the right to trial by jury as it existed in the Territory of Minnesota when our constitu-

tion was adopted), *and Morton Brick & Tile Co.*, 130 Minn. at 254, 153 N.W. at 528 (recognizing that Article 1, section 4 was meant to protect the right to a civil jury trial as it existed when the Minnesota Constitution was adopted and noting that the right to the jury trial extended only to actions at law). Making a jury's factual findings that are common to claims of law and claims for equitable relief binding on the district court not only helps protect the right to a jury trial by ensuring that proper weight is given to jury findings by the district court, but it also prevents inconsistent decisions between claims at law and claims for equitable relief, thus maintaining the integrity of the judiciary.[7]

## II.

■ Having determined that a jury's factual findings as to legal claims bind the district court as to claims for equitable relief, we must now determine whether the district court erred in granting declaratory relief for Onvoy. Minnesota's Uniform Declaratory Judgments Act grants courts the power "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Minn. Stat. § 555.01 (2006). Parties to a written contract "may have determined any question of construction or validity" arising under the contract. Minn.Stat. § 555.02 (2006). But the court has no jurisdiction over a declaratory judgment proceeding unless there is a justiciable controversy. *Seiz v. Citizens Pure Ice Co.*, 207 Minn. 277, 281, 290 N.W. at 802, 804 (1940). A justiciable controversy exists if the claim (1) involves definite and concrete assertions of right that emanate from a legal source, (2) involves a genuine conflict in

---

7. We note that under this rule, if a district court believes that a jury's verdict is unsupported by the evidence, the court may enter judgment notwithstanding the verdict, but the district court cannot both uphold the verdict and make contrary findings of fact with regard to the claims for equitable relief. *Ag. Servs. of America*, 231 F.3d at 731; *see Garza*, 814 F.2d at 557.

tangible interests between parties with adverse interests, and (3) is capable of specific resolution by judgment rather than presenting hypothetical facts that would form an advisory opinion. *State ex rel. Smith v. Haveland*, 223 Minn. 89, 92, 25 N.W.2d 474, 476–77 (1946); *Seiz*, 207 Minn. at 281, 290 N.W. at 804.

Before we can determine whether a justiciable issue remained after the jury's verdict, we must apply the principles announced in Part I of this opinion and establish which, if any, of the jury's factual findings were binding upon the district court. ALLETE asserts that the jury's conclusion that there was no breach of contract by ALLETE necessarily means that the jury concluded that Onvoy did not have a right to use space outside of its leased space in the GOB. Thus, the court was bound by that factual determination and there was no basis for the court to conclude that equitable relief under the GOB Lease was available to Onvoy. Onvoy counters that there are several possible factual bases for the verdict because ALLETE offered numerous theories as to why there was no breach of contract and, therefore, a justiciable controversy still existed after the jury's verdict.

■ We have carefully reviewed the district court's findings of fact, conclusions of law, and order for judgment on the equitable claims tried to the court. The court concluded that "based on the agreements between Onvoy and Allete" Onvoy was entitled to run cable from within its leased space to the exterior of the GOB without having to make financial payment. Nowhere does the court reference the jury's finding that ALLETE had not breached its contract with Onvoy and there is no discussion of the binding effect, if any, of that jury's finding on the court. Establishing what factual findings are common to the breach of contract claim and claim for declaratory relief requires a determination of what findings are explicit in or necessarily implied by the jury's verdict on the breach of contract claim. *See Ag. Servs. of America*, 231 F.3d at 731; *Butler v. Pollard*, 800 F.2d 223, 225–26 (10th Cir. 1986). In making this determination, we are mindful that any jury findings solely addressing claims for equitable relief are advisory under Minn. R. Civ. P. 39. In this case, where the jury's factual findings on the breach of contract claim may involve the same facts necessary for the district court to rule on the claims for equitable relief, the district court must determine what the jury's factual findings are and whether those findings are also implicated in the claim for equitable relief. Therefore, we remand the case to the district court so that the court may determine which of the jury's findings on the claims at law are common to Onvoy's claims for equitable relief. The district court may not enter a declaratory judgment that is inconsistent with the jury's findings as to any common factual disputes.

The decision of the court of appeals is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

HANSON, J., took no part in the consideration or decision of this case.