IN THE MATTER OF GUARDIANSHIP OF CARL A. HALLEN-BERG, INCOMPETENT.

CARL A. HALLENBERG v. OSCAR HALLENBERG.[1]

October 24, 1919.

No. 21,350.

Incompetent — findings supported by evidence.

1. The findings of fact and conclusions of law, to the effect that respondent was of sound mind and entirely capable of caring for his own

[1]Reported in 174 N. W. 443.

person and property and should not remain under guardianship, are sustained by the evidence.

**No error.**

2. No prejudicial error is disclosed in the record.

From an order of the probate court for Clay county, Sharp, J., denying the petition of Carl A. Hallenberg to have the fact of his restoration to capacity judicially determined, petitioner appealed to the district court for that conuty where the appeal was heard before Roeser, J., who made findings and reversed the order of the probate court. The motion of Oscar Hallenberg for amended findings was denied. From the order denying his motion for a new trial, Oscar Hallenberg, guardian, appealed. Affirmed.

*Edgar E. Sharp*, for appellant.

*N. I. Johnson*, for respondent.

HOLT, J.

In March, 1917, Carl A. Hallenberg was adjudged incompetent to care for and manage his property, and his son was appointed guardian of his father's person and estate. Two months thereafter, Hallenberg petitioned the probate court to be adjudged competent. The petition was denied, and he appealed to the district court where, after an exhaustive trial, a decree was entered reversing the probate court and determining that Hallenberg then was and had always been mentally sound and competent to care for his person and property. A motion for amended findings or a new trial was denied. The guardian appeals.

Mr. Hallenberg is now 82 years old. When about 30 years of age he left Sweden with his wife and young child and reached New York with only $55 on hand. He went to work, saved and accumulated, so that now he is worth about a quarter of a million dollars. Besides, he raised a family of seven children to maturity, all except the oldest receiving a college or professional education. In 1899 his wife died in Moorhead, where the family had resided for many years. A few years later he went to Minneapolis and came in touch with a comparatively young woman whom he married to avoid a breach of promise suit. A

son was born to them. The union was unfortunate. His wife obtained a divorce, and, as permanent alimony, some $35,000 in money and property, on condition that she support the child, whose custody was awarded her. He returned to Moorhead where he lived with his son Oscar for some time, and then took up his residence in a smaller house that he there erected. He lived alone, except for the housekeepers he employed from time to time. One of these stayed with him over a year, and until she married.

Mr. Hallenberg then advertised in a Swedish periodical for a housekeeper. As the advertisement held out the hope of possible marriage with a housekeeper who might find favor in his eyes and it made no secret of his wealth, he was flooded with applications. Youth and beauty still appeal strongly to him. And, as these qualities do not always go hand in hand with good housekeeping, his selection of a housekeeper was not always happy, and there were frequent changes. Among the applicants may also have been designing women. At any rate, one brought an action against him for assault and recovered a verdict of $300. In the fall of 1916, he had secured one who suited him so well that he offered to marry her. She was agreeable, and her mother approved the match. As the wedding was about being arranged for, Mr. Hallenberg's sons, evidently fearing a repetition of his last matrimonial venture, and desirous of forestalling further provocations for damage suits, petitioned to have him adjudged incompetent. After a hearing had been partially completed, Mr. Hallenberg was induced to withdraw opposition, and he and his attorney, and the petitioners as well as his two married daughters, signed a stipulation, wherein it was agreed that Oscar should be his father's guardian. But, as above stated, after two months' experience Hallenberg found the guardianship irksome, and again desired to manage his own affairs.

No good purpose would be served by an extended reference to the evidence. It was virtually conceded that Carl A. Hallenberg was as perfectly competent to care for and manage his property now as he ever had been, except for his proneness to give attractive and designing young women an opportunity to enmesh him in marriage or mulct him in domage suits. We do not think the statute governing the appointment of

guardianship for incompetents contemplated that one who is imprudent or indiscreet in his dealings with the opposite sex must be put under guardianship. The evidence does not show that he squandered his means upon the women employed by him or with whom he came in contact; indeed, no specific instance of ordinary generosity even is disclosed by the testimony. The litigation he has had on account of his conduct with women, aside from the divorce suit, has not been of such magnitude that apprehension of what might happen in the future to his estate need be considered. His experience in the second marriage does not prove that a guardian must be appointed. The parties lived together for nine years, and the settlement of their property rights does not indicate waste. It is safe to say that were Hallenberg 40 instead of 80 years old no plausible claim could be made that his disposition and conduct towards women would give a possible excuse for retaining him under guardianship against his wishes.

No doubt it would be the part of wisdom for Mr. Hallenberg to eschew all desire to again enter wedlock, and it is natural that his children should be averse to his doing so, not only on account of what loss it might mean to them as heirs, but also because they feel that an undesirable notoriety attaches to one who marries at that age. But these matters are not controlling upon the proposition whether he is competent to manage his own affairs.

Happily the bitterness which usually characterizes contests of this nature does not appear in the record before us. Mr. Hallenberg displayed no resentment towards his sons for procuring the appointment of a guardian, and clearly the sons did so for the laudable purpose of protecting their father. However, it is readily seen that Mr. Hallenberg, though at first persuaded to consent to be put under guardianship, quickly repented of the act and felt chagrin at being deprived of the control and management of the property he had been so intense in accumulating. And no person in good health and of sound mental powers should be placed in that position without clear proof that, because of the matters enumerated in section 7433, G. S. 1913, he "so spends or wastes his estate as to be likely to expose himself or his family to want or suffering." His family cannot well be exposed to want or suffering from his acts.

His children are all grown and appear to be prosperous in their several stations. He has large means, and it is unlikely that he will ever expose himself to want or suffering because of the waste of his property. He is in excellent health, reads without glasses, and has but slight, if any, impairment of memory or other faculties. He does not of late years use liquor to excess. We think the record so abundantly sustains the finding of competency that we are not warranted in disturbing the decree, unless prejudicial error was made by the court below in the reception or exclusion of testimony.

We have examined the errors assigned upon the rulings during the trial with care, but find none that are deemed so prejudicially erroneous as to entitle to a new trial. The attorney who appeared for Hallenberg when he was adjudged incompetent was called by appellant. The court indicated that the witness would be permitted to state such conversations with his client as were had in the presence of third parties, but not those when he was alone with him. No real effort was made to elicit testimony from the witness in line with what the court stated to be admissible. The court's suggestion was clearly right. Complaint is made because the attorney was not allowed to give his opinion as to whether Hallenberg was of sound mind on the question of women. An answer was excluded on the ground that the question called for expert testimony, and the impropriety of requiring Hallenberg's former attorney to give the requested opinion which must necessarily be based in part upon what the witness had learned in the course of privileged communications. There was no error in the ruling. Nor was there in excluding evidence of certain testimony given by plaintiff in the assault case against Hallenberg, above referred to. The same is also clearly true in respect to excluding testimony of a physician as to consultations with Hallenberg in regard to certain ailments. The only reason sought to sustain its admissibility, in the face of the express provision in the statute to the contrary, was that the physician was the patient's son-in-law and did not expect pay for his services. The application of the rule does not depend upon the services being gratuitous or paid for. Some assignments of error are based on a refusal to make additional findings, but we consider the findings asked for of no controlling value

upon the real issue of competency, which had to be met and was met by a square finding that Hallenberg was of sound mind, entirely capable of taking care of all his property and of his person.

The trial court was exceedingly liberal in permitting introduction of any testimony that might have a bearing upon Hallenberg's competency, and evidently gave the matter careful consideration. The record does not justify this court in setting aside or altering the action of the trial court.

The order is affirmed.