217 N.W.2d 754 (1974)
In re GUARDIANSHIP OF William S. STANGER, et al,
Ervin HARTMANN, et al, Appellants,
v.
Henry M. WHITEMAN, guardian, Respondent.
No. 44323.
Supreme Court of Minnesota.
April 5, 1974.
Firestone, Fink, Krawetz, Miley & Maas, William W. Fink, and Kenneth J. Maas, Jr., St. Paul, for appellants.
Dougherty & Scott, and Kenneth E. Scott, Fairmont, for respondent.
Heard before KNUTSON, C. J., and OTIS, MacLAUGHLIN, and MULALLY, JJ., and considered and decided by the court.
PER CURIAM.
In April 1970, William S. Stanger, the paternal grandfather of the minor children involved in these guardianship proceedings, *755 petitioned the Martin County probate court to have Henry M. Whiteman appointed guardian of the persons and estates of his three minor grandchildren. Shortly thereafter, a petition was filed by Ervin F. Hartmann, the maternal grandfather, requesting that he and his wife, Betty Lou Hartmann, be appointed guardians of the children. On December 9, 1970, Whiteman was appointed guardian by the probate court. Appeals were taken to the district court, which resulted in the affirmance of Whiteman's appointment. This is an appeal from the district court's denial of a new trial. We affirm.
On April 24, 1967, a divorce proceeding was pending in Ramsey County between Beth Marie Stanger and William S. Stanger, Jr. On that date William Stanger murdered his wife and then committed suicide. They were survived by three children: William S. Stanger, born June 19, 1960; Cynthia Stanger, born August 28, 1961; and Stephen A. Stanger, born November 2, 1962. Since April 25, 1967, the three children have lived in Fairmont, Minnesota, with their maternal grandparents, Ervin and Betty Hartmann.
The evidence clearly shows that the children have received adequate care and affection in the Hartmann home, and there is no attempt by anyone to take the physical custody of the children from the Hartmanns. The genesis of the dispute in this proceeding is the acrimony surrounding the visitation rights of the paternal grandparents, William Stanger and his former wife, Alice Stanger. Mrs. Hartmann testified that she had refused to allow Mr. Stanger to see the children even after the probate judge informed her that she should do so. She said that she opposed Stanger's visiting the children because he insisted on talking to them about their father and that this greatly upset them. Stanger testified that he seldom discussed the children's father with them. He said that he felt unwelcome in the Hartmann home, and he eventually stopped visiting the children.
Florence Nowicki, a social worker, testified that she had been requested by the paternal grandparents to see what her agency could do about the visitation problem. She learned from Mrs. Hartmann that visitation was refused because Mr. Stanger talked about the children's father. Mrs. Nowicki testified that the children would benefit by association with their paternal grandparents.
The district judge extensively questioned Mrs. Hartmann. During the course of the questioning, Mrs. Hartmann's bitterness toward Mr. Stanger was clearly revealed. She indicated that she blamed Mr. Stanger, at least in part, for the death of her daughter because she claims that he knew there was something wrong with his son at an early age, but failed to seek help for him.
Henry M. Whiteman, the guardian appointed by the probate court, testified that, to the best of his knowledge, the purpose of the guardianship was to relieve the problem of the visitation rights of the paternal grandparents and to establish a savings plan for the children. He testified that he deposits $25 a month for each child from social security payments.
The issue is whether the district court abused its discretion in affirming the appointment of Whiteman as guardian. We have long held that the appointment of a guardian is uniquely within the discretion of the appointing court. In In re Guardianship of Dahmen, 192 Minn. 407, 410, 256 N.W. 891, 893 (1934), we said:
"Generally speaking, the selection of the person to be appointed guardian is a matter peculiarly for and within the discretion of the appointing court. On appeal it devolves upon the appellant clearly to show error. * * *
"The probate court as well as the trial court possessed opportunities and advantages not available to us. The parties were before both courts and duly testified. * * * The evidence amply sustains the conclusion reached. There can be no doubt that upon this record a pure fact question has been determined contrary *756 to appellant's claims. He is bound thereby. We see no reason for interference."
See, also, Swick v. Sheridan, 107 Minn. 130, 119 N.W. 791 (1909); Prokosch v. Brust, 128 Minn. 324, 151 N.W. 130 (1915); Wood v. Wood, 137 Minn. 252, 163 N.W. 297 (1917); Hallenberg v. Hallenberg, 144 Minn. 39, 174 N.W. 443 (1919); Wilkowske v. Lynch, 124 Minn. 492, 145 N.W. 378 (1914).
Here, as in Dahmen, the probate court and the district court had ample opportunity to view the witnesses and fully consider the evidence. The district court's memorandum clearly indicates that the judge was primarily concerned with the best interests of the children and that, in his judgment, the children would suffer as a result of being deprived of the affection and companionship of their paternal grandparents. The district court obviously feared that if the Hartmanns were appointed as guardians the visitation rights of the paternal grandparents would be seriously jeopardized. The court's memorandum states, in part, as follows:
"What is not understandable is that Mrs. Hartmann is now proclaiming that the petitioner was at fault for not securing proper treatment for his son. Furthermore, it is a fair deduction, from the evidence as a whole, that she is attempting to instill in the children an active dislike for their grandfather. * * *
"The solution to the real problem here appears to lie in the heart and the mind of Mrs. Hartmann. The finding of this Court, that it is in the best interests of the children to be under guardianship of someone other than the Hartmanns, is based on the belief that it is unhealthy for the children to be deprived of a normal relationship with their paternal grandparents, and especially for them to be encouraged to adopt a hostile attitude toward the Stangers. If Mrs. Hartmann's attitude does not change, the orders of the Courts will be futile, since in a relatively few years the children will have a voice in the choice of their guardians. However, Mrs. Hartmann might give some thought to the likelihood that the children will one day discover that their paternal grandfather had something beneficial to offer them through his companionship, and that they have been deprived of it. If and when that happens, the present attitude and conduct of Mrs. Hartmann might well redound to her detriment in the eyes of the children."
We affirm the order of the district court. Its decision to appoint a third party as guardian preserves the status quo of the Hartmann family, assures the children of some savings for the future, and facilitates the paternal grandparents' ability to visit with their grandchildren.
Affirmed.
SHERAN, C. J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.