In re The **GUARDIANSHIP OF Ann J. FINGERHOLTZ.**

No. C2–84–185.

Court of Appeals of Minnesota.

Nov. 13, 1984.

Review Denied Feb. 6, 1985.

Stephen W. Cooper, St. Paul, for appellant.

Ernest Cutting, St. Paul, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and PARKER and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from two orders of the Ramsey County Probate Court. One order denied the appellant's petition to succeed as general guardian of the ward, and another order granted the present guardian's petition to sell the ward's homestead. We affirm both orders of the probate court.

## FACTS

Court proceedings in this case began on March 10, 1983, when the Adult Protection Unit of Ramsey County Community Human Services filed a petition for appointment of a special guardian for the ward, Ann Fingerholtz. The petition alleged that the ward was a confused, disoriented and belligerent 83 year old woman suffering from senile dementia, prone to harm, and in need of 24 hour care. The petition alleged:

> The proposed ward has been living independently with the aid of a homemaker (8 hours per week), a nurse, once a week, meals on wheels, and frequent assistance from relatives (including calls twice a day from a grandaughter-in-law). Over the last six months, the nurse and homemaker have noted a marked decrease in the ward's ability to care for herself. *On February 4, 1983 an incident occurred between the ward and her son in which she allegedly suffered injuries which resulted in hospitalization and the filing of a Vulnerable Adult Abuse Complaint.* Upon discharge from the hospital on February 10, 1983 a plan was initiated which called for 24 hour supervision by the Ramsey County Nursing Service in her home. After approximately 3 weeks, the Nursing Service was forced to withdraw for fear of safety to their personnel, as Mrs. Fingerholz had allegedly attempted to attack one aid with a butcher knife and another with a hatch-

et. *The family refuses to place Mrs. Fingerholz in any type of Nursing Home* and the medical authorities are in agreement that 24 hour supervised care is required in order to reduce the risk of Mrs. Fingerholz hurting herself while she is at home.

(Emphasis supplied.)

The Ramsey County Probate Court granted the petition and appointed an employee of Ramsey County Community Human Services as special guardian of the ward.

On March 14, 1983, the ward's son, Richard Fingerholtz, filed a petition seeking to be named general guardian of his mother. The special guardian filed objections to the petition and the court denied Richard Fingerholtz's petition, finding that the Vulnerable Adult Abuse Complaint had been substantiated and that Richard Fingerholtz was the son who had physically and verbally abused the ward. The court also found that although three medical doctors had recommended placing the ward in a nursing home, Richard Fingerholtz had unequivocally stated he would not place his mother in a nursing home. The court concluded that Richard Fingerholtz was "not a suitable or qualified person to be appointed General Guardian of the person and estate of the ward" and that "[t]he appointment of Richard Fingerholtz as General Guardian of the person and estate would not be in the best interest or safety of the ward."

On July 1, 1983, the special guardian filed a petition requesting that the court appoint a general guardian for the ward. On that same date John Fingerholtz, the ward's son-in-law, petitioned the court, requesting that he be appointed general guardian. After taking testimony, the court on August 2, 1983, entered findings of fact and conclusions of law, ordering that Ernest Cutting, an attorney and disinterested third person, be appointed general guardian.

Subsequent petitions for appointment of a successor guardian were filed by Richard Fingerholtz on behalf of the ward's daughter and by Roy Fingerholtz, the ward's grandson. The court on October 27, 1983, denied both petitions, determining "that the evidence * * * fails to show any valid reason to remove the guardian."

Tom Fingerholtz, the present appellant, and another grandson of the ward, filed a petition for the appointment of himself as successor guardian on December 24, 1983. The court on January 16, 1984, denied that petition also, again finding "that the evidence * * * fails to show any valid reason to remove the General Guardian, Ernest E. Cutting." The present appeal was taken by Tom Fingerholtz from that order. Appeal is also taken from an order of the probate court directing that the present guardian be allowed to sell the ward's homestead in order to generate income for the payment of the ward's debts.

## ISSUES

1. Did the Ramsey County Probate Court properly deny Tom Fingerholtz's petition to be appointed successor guardian?

2. Did the Ramsey County Probate Court properly grant the guardian's petition to sell the ward's homestead?

## ANALYSIS

### I

*Successor guardian.*

The question of when a guardian may be removed and a successor guardian appointed is one which has not been recently addressed in Minnesota. Although it is clear that the probate court has continuing jurisdiction over guardianships, (Minn.Stat. § 525.011 (1982)) the statutory changes which resulted from the adoption of the Uniform Probate Code have left a void in the law concerning removal of general guardians. Prior to 1974 the law was clear:

When a representative becomes insane or otherwise mentally incompetent, or unsuitable, incompetent, or incapable of discharging his trust, or has mismanaged the estate, or has failed to perform any duty imposed by law or by any lawful

order of the court, or has absconded, or has ceased to be a resident of this state, the court may remove him. The court on its own motion may, and on the petition of any person interested in the estate shall, order the representative to appear and show cause why he should not be removed. * * *

Minn.Stat. § 525.501 (1971).

■■■ In 1974 the above language was repealed. The present statute on removal provides in relevant part:

If a guardian or conservator dies, resigns, or is removed, the court may appoint a successor with at least 14 days prior notice to the ward or conservatee, his spouse, parents, adult children and siblings, and to other persons as the court may direct. If the ward or conservatee has capacity to do so, he may nominate a person to serve as successor or may give instructions to the succeeding guardian or conservator or he may do both. * * *

Minn.Stat. § 525.59 (1982). In addition, Minn.Stat. § 525.6195 (1982), entitled "Resignation or Removal Proceedings," provides:

(a) Any person interested in the welfare of a ward, or the ward, if 14 or more years of age, may petition for removal of a guardian on the ground that removal would be in the best interests of the ward. A guardian may petition for permission to resign. A petition for removal or for permission to resign may, but need not, include a request for appointment of a successor guardian.

(b) After notice and hearing on a petition for removal or for permission to resign, the court may terminate the guardianship and make any further order that may be appropriate.

(c) If, at any time in the proceeding, the court determines that the interests of the ward are, or may be, inadequately represented, it may appoint an attorney to represent the minor, giving consideration to the preference of the minor if the minor is 14 or more years of age.

The above provision, however, is located within the sections of the statute which specifically concern guardianships of minors (§§ 525.615–525.6198); thus it is questionable whether its language is intended to encompass the resignation or removal of guardians of adult persons. A particular provision in a statute should not be read out of context, but should be taken together with other associated words and phrases and related provisions. *Kollodge v. F. and L. Appliances, Inc.*, 248 Minn. 357, 360, 80 N.W.2d 62, 64 (1956). Subdivision (c) of the above-quoted provision especially appears to convey an understanding that the term "ward" as used in the section refers only to minor wards.

■■■ Nonetheless, reference in the above statute to the "best interests of the ward" is consistent with that same standard which is used for determining who should initially be appointed as general guardian. We therefore conclude that a probate court should apply that standard when a party has petitioned for removal of a guardian, whether or not the ward is a minor. Although in the present instance the probate court did not specifically refer to the "best interests" of the ward, its finding that there was no valid reason to remove the present guardian logically contains the implication it was in the best interests of the ward to have Cutting remain.

Caselaw involving the initial appointment of a guardian states the appointment is a "matter peculiarly for and within the discretion of the appointing court," *Schmidt v. Hebeisen*, 347 N.W.2d 62, 64 (Minn.Ct. App.1984), *citing In re Guardianship of Dahmen*, 192 Minn. 407, 256 N.W. 891 (1934), and that although generally a court will select a family member as a guardian, this is not mandatory, since the interests of the ward are paramount. *Id.* The scope of review of the probate court's broad discretion to select an appropriate guardian has been cited as the "clear abuse of discretion" standard of review. *Schmidt*, 347 N.W.2d at 64; *In re Guardianship of Stanger*, 299 Minn. 213, 215, 217 N.W.2d 754, 755 (1974). The issues of family member versus a disinterested third person, dis-

cretion of the probate court, and our standard of review were covered in *Schmidt* which is controlling. These principles are transferable to the present situation involving retention of a guardian whom the court had previously determined to be appropriate.

■ Although the appellant cites several reasons for his contention that Ernest Cutting has been an inadequate guardian, each of those claims has been adequately answered by Cutting. A review of the transcript, in conjunction with the arguments of the parties, shows the respondent guardian presented the trial court with justification for his actions. Cutting demonstrated his qualifications and abilities to remain the appropriate guardian.

While we believe a relative or family member should normally be preferred in a contested guardianship proceeding, here the probate court acted properly and within its discretion in appointing an outside, disinterested person as general guardian. The probate court denied prior petitions by relatives interested in the position of successor guardian due to some anticipation or sense of problems with this particular family. The probate court had the opportunity to view the various petitioners and hear the evidence and its decision was proper under the circumstances.

## II

*Sale of homestead.*

Minn.Stat. § 525.63 (1982) provides:

The court may direct a sale, mortgage, or lease of *any* real estate of a ward or conservatee when the personal property is insufficient to pay his debts and other charges against his estate, or to provide for the support, maintenance, and education of the ward or conservatee, his spouse, and dependent children, or when it shall determine the sale, mortgage, or

lease to be for the best interest of the ward or conservatee.

The homestead of a ward or conservatee shall not be sold, mortgaged or leased unless the written consent of the spouse has been filed.

(Emphasis supplied).

■ At the hearing on this matter the respondent guardian testified that the only property which the ward owned other than her homestead consisted of approximately $60.00 in a local bank, and she received rent of $475.00 per month from the homestead, in addition to social security payments. The estimated market value of the homestead was $51,334.00, with no liens or encumbrances. The guardian testified he had encountered the same situation in a number of guardianships where the primary asset of the ward is a homestead and where there are insufficient cash assets to pay for the support and maintenance of the ward. He stated:

It's been my experience that it is not economically feasible to continue to hold a single piece of homestead real estate for the income which it might produce since the costs of maintaining the property frequently are equal to if not in excess of the rents that can be obtained, particularly once the property goes nonhomestead for tax purposes. And if there are any major maintenance expenses, there is no way in which to cover those expenses because there's no cash available.[1]

■ The last sentence of Minn.Stat. § 525.63 is inapplicable since Mrs. Fingerholtz is a widow. We note also that any potential future benefit to the heirs hanging on to the homestead is subject to Minn. Stat. § 510.05 (1982) which gives authorities providing medical care and assistance to Mrs. Fingerholtz a valid lien upon the homestead at her death for the amount of the services rendered.

1. Upon appeal the respondent guardian has attempted to submit new evidence concerning the income and expenses of the homestead property and the cost of the ward's nursing home expenses. Because this evidence was not introduced at the hearing below, we will not consider it now. *Plowman v. Copeland, Buhl & Co., Ltd.,* 261 N.W.2d 581 (Minn.1977).

Whether the sale of the homestead was proper is a factual issue subject to the discretion of the probate court. It had full opportunity to view the witnesses and balance the evidence. On the record, the probate court did not err.

## DECISION

The probate court acted within its discretion in denying the appellant's petition to succeed as general guardian and in granting the guardian's petition to sell the ward's homestead.

Affirmed.