**WASTE RECOVERY COOPERATIVE OF MINNESOTA, et al., Respondents,**

**and**

**U.S. West Marketing Resource Group, Inc., a Colorado Corporation, intervenor, Respondent,**

**v.**

**The COUNTY OF HENNEPIN, et al., Appellants.**

Nos. C5–91–748, C4–91–790.

Court of Appeals of Minnesota.

Oct. 15, 1991.

Review Denied Dec. 9, 1991.

Mitchell Scott Paul, Minneapolis, for Waste Recovery Cooperative of Minnesota, et al.

George L. Carlson, Minneapolis, for U.S. West Marketing Resource Group, Inc., a Colorado Corp.

Michael O. Freeman, Hennepin County Atty., Deonne Parker, Asst. County Atty., Minneapolis, for County of Hennepin.

Considered and decided by DAVIES, P.J., and PARKER and SHORT, JJ.

## OPINION

PARKER, Judge.

Plaintiffs Waste Recovery Cooperative of Minnesota (WRC) and Poor Richard's, Inc., requested a temporary restraining order and a temporary injunction to prevent Hennepin County from enforcing a letter order attempting to halt WRC's efforts to conduct a private recycling program which involved the collection and recycling of used telephone directories. U.S. West filed a motion to intervene as a plaintiff and filed a complaint for declaratory relief. The district court issued a declaratory judgment in favor of U.S. West.

On appeal, Hennepin County challenges the district court's determination that the county had no authority over the recycling program. We affirm.

## FACTS

U.S. West Marketing Resource Group, Inc., is a subsidiary of U.S. West, Inc., a regional holding company formed by the breakup of American Telephone and Telegraph Company's Bell System. U.S. West Marketing Resource Group, Inc. (U.S. West), through its U.S. West Direct division, publishes the White and Yellow Pages telephone directories for Minneapolis and St. Paul.

Upon distributing the 1991 directories, U.S. West publicly invited its users to recycle their old directories by taking them to Target stores and leaving them in containers designated for that purpose. U.S. West in turn sold the directories for $35 per ton to Waste Recovery Cooperative of

Minnesota (WRC). WRC, in turn, hired Poor Richard's, Inc., to collect the directories from Target locations and bring them to WRC's location in Ramsey County, where the books are stored.

Through its Department of Environmental Management, Hennepin County investigated the U.S. West recycling plan and concluded that, pursuant to Hennepin County, MN, Ordinance No. 12 (1990), the county had authority over the U.S. West recycling program. The county sent letters to WRC and to Poor Richard's, claiming authority over the project. The Department of Environmental Management sent a directive to U.S. West, asserting that the directories were "waste" and mandating that U.S. West deliver all of the collected directories to a Hennepin County designated facility, such as the Minneapolis garbage burner. The directive also required that U.S. West pay a fee for disposal at the designated facility.

## ISSUES

1. Did the trial court err in holding that the U.S. West telephone directories are not mixed municipal solid waste?

2. Did the trial court err in holding that even if the U.S. West telephone directories are mixed municipal solid waste, they are exempt from Hennepin County's authority pursuant to Minn.Stat. § 115A.83?

3. Did the trial court err in failing to hold that Hennepin County has general authority to regulate recyclable materials and thus has authority to inspect WRC's operations?

## DISCUSSION

### Standard of Review

On appeal from a declaratory judgment, this court applies a "clearly erroneous" standard of review to the factual findings. *Toombs v. Daniels*, 361 N.W.2d 801, 805 (Minn.1985); *see Shelby Mut. Ins. Co. v. Kleman*, 255 N.W.2d 231, 234 (Minn. 1977); *Mangold Midwest Co. v. Village of Richfield*, 274 Minn. 347, 361, 143 N.W.2d 813, 821–22 (1966). In a declaratory judgment action tried without a jury, the court

as trier of fact must be sustained in its findings unless they are "palpably and manifestly contrary to the evidence." *Samuelson v. Farm Bureau Mut. Ins. Co.*, 446 N.W.2d 428, 430 (Minn.App.1989), *pet. for rev. denied*, (Minn. Nov. 22, 1989).

When reviewing questions of law, the appellate court need accord no deference to the district court's determination. *Frost–Benco Elec. v. Minnesota Pub. Util. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Where the trial court applies the law to undisputed facts, the reviewing court may treat that determination as a matter of law and need not show deference. *State by Mendota Heights Police v. Coley*, 453 N.W.2d 64, 65 (Minn.App.1990). Further, where the lower court applies statutory language to the facts of a case, its conclusion is a matter of law and does not bind the appellate court. *Nhep v. Roisen*, 446 N.W.2d 425, 427 (Minn.App.1989), *pet. for rev. denied* (Minn. Dec. 1, 1989).

### I

Hennepin County Ordinance Number 12 is entitled "Solid Waste Designation for Hennepin County." Section 1.03 provides that "[n]o person shall collect, transport or dispose of waste subject to this Ordinance except in full compliance with the provisions herein." Hennepin County, MN, Ordinance No. 12, § 1.03 (1990). Section 3.01 provides:

All Designated Waste generated within the County, including loads that contain Designated Waste with Undesignatable Waste or Problem Materials, shall be delivered to a Designated Facility and to the final destination point as directed by the County, except as provided in Section 3.08.

Hennepin County Ordinance No. 12, § 3.01 (1990). Section 2.06 defines "Designated Waste" as "Mixed municipal solid waste generated in this County, excluding Hazardous Waste, Infectious Waste, and Undesignatable Waste." Hennepin County, MN, Ordinance No. 12, § 2.06 (1990).

Minn.Stat. §§ 115A.01–.991 (1990) are entitled the Waste Management Act. Minn.

Stat. § 115A.81 (1990) defines "designation" to mean a requirement by a waste management district or county that all mixed municipal solid waste generated within a county be delivered to a processing or disposal facility within the county. Minn.Stat. § 115A.03, subd. 21 (1990), defines "mixed municipal solid waste" as

> garbage, refuse, and *other solid waste* from residential, commercial, industrial, and community activities which is *generated and collected in aggregate*, but does *not include* auto hulks, street sweepings, ash, construction debris, mining waste, sludges, tree and agricultural wastes, tires, lead acid batteries, used oil, *and other materials collected, processed and disposed of as separate waste streams.*

(Emphasis added.)

The trial court concluded that the U.S. West phone directories were not "mixed municipal solid waste" because they were not garbage, refuse or "other solid waste." Minn.Stat. § 115A.03, subd. 34 (1990), provides that the term "waste" means "solid waste, sewage sludge, and hazardous waste." Minn.Stat. § 116.06, subd. 10 (1990), defines "solid waste" as

> garbage, refuse, sludge from a water supply treatment plant or air contaminant treatment facility, and *other discarded waste materials* and sludges * * *.

(Emphasis added.)

The trial court did not clearly err in finding that, because the directories were not discarded as refuse but, rather, delivered to U.S. West for recycling, the directories were neither "waste" nor "solid waste." We do not doubt that there were owners who merely discarded their directories in trash cans and dumpsters. Such directories might be "discarded waste materials" and thus "solid waste." The trial court, however, found that, pursuant to the U.S. West program, owners delivered their directories to designated Target stores for recycling. The trial court's conclusion that such delivery precluded a finding that the directories were "discarded as refuse" was not clearly erroneous.

■ Not only was the trial court's finding within reason, but, as a matter of law, we hold that the directories so collected do not fall within the statutory definition of "mixed municipal solid waste." The statute provides that mixed municipal solid waste is "garbage, refuse, and other solid waste * * * generated and collected in aggregate." Minn.Stat. § 115A.03, subd. 21 (1990).

■ The word "aggregate," when examined in context with the words "garbage," "mixed" and "refuse," implies a compilation of different waste materials, such as coffee grounds, food scraps and tin cans. We interpret statutory language in its context and do not define each word isolated from others. *Chiodo v. Board of Educ. of Special School Dist. No. 1,* 298 Minn. 380, 382, 215 N.W.2d 806, 808 (1974); *see, e.g., In re Guardianship of Fingerholtz,* 357 N.W.2d 423, 426 (Minn.App. 1984). The U.S. West directories were not "collected in aggregate" with other mixed municipal solid waste materials, but were delivered outside the mixed municipal solid waste stream to the collection bins.

Moreover, the directories also fall outside of the statutory definition of "mixed municipal solid waste," because they were collected in a "separate waste stream." The definition of mixed municipal solid waste exempts "auto hulks, street sweepings * * * and other materials collected, processed and disposed of as separate waste streams." Minn.Stat. § 115A.03, subd. 21 (1990).

■ We believe that a "separate waste stream" is a collection of materials outside of the general flow of mixed municipal solid waste. Directories discarded with other materials in waste containers would not be collected in a separate waste stream. In the U.S. West recycling program, however, owners did not merely throw away the directories along with other waste materials; they deposited the directories apart from other materials, into special collection bins for recycling. Because the directories were not mixed municipal solid waste, the

county had no authority over their collection.

## II

■ Even if the U.S. West directories were considered to be mixed municipal solid waste, we agree with the trial court that the directories so collected would qualify for exemption under the statute. Minn. Stat. § 115A.83(1) (1990) provides that the designation requirement does not apply to "materials that are separated from solid waste and recovered for reuse in their original form or for use in manufacturing processes."

Hennepin County argues that the exemption applies only after *actual use* in a manufacturing process. The county further alleges that U.S. West failed to qualify for exemption by virtue of its inability to prove the feasibility of its recycling program. The trial court, however, held that the "recovered * * * for use" language requires only that the material be recovered for the purpose of using it in a manufacturing process at some future time. The court held further that the county failed to show that U.S. West directories were not recovered for use in a manufacturing process. We agree with the trial court's interpretation of the statute and with the court's finding regarding U.S. West's compliance.

The trial court observed, and we agree, that if the exemption were to apply only after a showing of actual use in a manufacturing process, as the county urges, the county, and ultimately the court, would be required to evaluate the feasibility and effectiveness of the recycling endeavor. We decline to adopt such a strained reading of the statute. The uncontested facts at trial indicate that U.S. West sold the directories to WRC for use in manufacturing processes. WRC offered testimony at trial that it purchased the directories for use in manufacturing processes. WRC also claimed it was engaged in activities calculated to effect manufacturing processes, but was frustrated by the county's actions in the matter. We hold that, on this record, the county has failed to show that

U.S. West has not thus far complied with the exemption provision.

## III

■ Finally, the county claims authority over the directories by virtue of a general regulatory authority over recyclables pursuant to various statutory provisions in the Waste Management Act. We decline to rule on the merits of such general regulatory authority, as it was scarcely mentioned in the trial court and, as the trial court did not rule upon it, doing so here would be tantamount to an advisory opinion. Meanwhile, we acknowledge that, at some point, public health concerns could, presumably, warrant county inspection of WRC's recycling efforts or non-efforts.

## DECISION

We hold that the U.S. West telephone directories are not "mixed municipal solid waste" under Minn.Stat. § 115A.03, subd. 21 (1990), and consequently are not subject to Hennepin County designation authority. We further hold that the directories qualify for exemption from county authority under Minn.Stat. § 115A.83(1) (1990).

Affirmed.