# CATHERYNE P. HARRINGTON v. PHILIP FAIRCHILD.[1]

January 18, 1952.

No. 35,565.

*Bowen & Bowen,* for appellant.
*Covell, Root & Bachelder,* for respondent.

MAGNEY, JUSTICE.

On the 18th day of January 1941, one Ralph Harrington sold to defendant, Philip Fairchild, his tailoring business in Minneapolis for the sum of $50,000. The contract of sale, designated "Bill of Sale," reads in part as follows:

"In consideration of the sum of fifty thousand ($50,000.00) dollars * * *, I, Ralph Harrington * * * hereby set over, transfer, sell and assign to Philip Fairchild * * * all my right, title and interest * * * in and to the merchant tailoring establishment owned by me individually and operated under the name 'Ralph Harrington' * * *.

\* \* \* \* \*

---

[1]Reported in 51 N. W. (2d) 71.

"It is understood and agreed that the sum of fifty thousand ($50,000.00) shall bear interest at the rate of six (6%) per cent per annum from the date hereof. The purchaser, Philip Fairchild, agrees to pay said sum of fifty thousand ($50,000.00) dollars plus interest as follows:

"The sum of three hundred ($300.00) dollars to Kathryn Harrington, wife of Ralph Harrington, on the 1st day of July, 1941, and a like sum on the 1st day of each and every month thereafter until the entire sum of fifty thousand ($50,000.00) dollars plus interest has been paid. Should Kathryn Harrington die prior to the time said sum and interest has been paid in full, any balance remaining unpaid shall be credited to Philip Fairchild, and all obligations to continue said payments shall cease."

The complaint, which was served on defendant on June 13, 1949, alleges that on January 27, 1941, nine days after the execution of the contract, Harrington died. His entire estate was decreed to plaintiff, his widow. It further alleges that defendant duly paid to plaintiff $300 per month until February 1, 1949, consisting of 96 monthly installments or a total of $28,800. It further alleges that on or about December 14, 1948—

"*defendant informed the plaintiff that he would make no further payments, pursuant to said contract or otherwise,* to the plaintiff, and that by reason thereof and by reason of other acts and conduct of the defendant, plaintiff alleges that said defendant has wholly repudiated said contract * * * and that in truth and in fact said defendant has failed, neglected and refused ever since the first day of January, 1949, and to the date hereof to pay to said plaintiff * * * ($300.00) per month, and that at the date hereof of [*sic*] said defendant is in default in the payments required under the terms of said Exhibit 'A' [the contract] in the total sum of * * * ($1,500.00) * * *.

"That said defendant has also *informed the plaintiff that said contract was not a valid or subsisting contract,* and by his acts and conduct has denied that said contract was duly executed or

delivered and has otherwise denied that he was under any further obligation to the plaintiff by reason of said contract or otherwise."

Plaintiff prayed judgment declaring that the contract constituted a good, valid, and subsisting contract, that defendant repudiated the contract as of February 1, 1949, and that subsequent thereto he has substantially breached the terms of the contract. Further relief, not important to the main question raised, was also asked for. In a second cause of action, plaintiff sought recovery of $1,500, the amount in which plaintiff claims she has been damaged by the breach of the contract to the date of the complaint; and an additional sum of $42,359.99 by reason of defendant's repudiation and breach of the whole contract. In the second cause of action, plaintiff realleged the allegations of the first cause of action. Defendant demurred to the two causes on the grounds that the facts stated therein do not state a cause of action and that several causes of action are improperly united. The demurrer was overruled, and the questions presented were certified as important and doubtful. Defendant appealed.

No argument has been presented by defendant on the second ground of demurrer. The sole question, then, is whether the facts set out in the complaint state a cause of action.

From the complaint it is apparent that defendant was not in default in the payments of $300 per month as called for by the contract. Plaintiff alleges that at the time of service of the complaint on June 13, 1949, defendant had made 96 payments, which were all the payments that were due and payable up to that time, as the next payment was not due until July 1949. Since the payments ceased in February 1949, defendant must have made five payments in advance. Probably, as has been suggested, he commenced his payments in February, immediately after Harrington's death on January 27, 1941, while the first payment under the contract was not due until the following July 1. It is apparent that all the payments cannot become due and payable during the lifetime of either party. Therefore, it is fair to assume that, apart from an agreement between the parties, if defendant is to get credit for

the $1,500 he paid in advance, the only way he can do so is to fail to pay five current payments as they become due. At the time the complaint was served, defendant had withheld payment of four installments. The fifth had not become due and payable. Since all payments due at the time of the bringing of the action had been paid, according to the averment of the complaint itself, it is obvious that the complaint does not state a cause of action for damages. It does not follow, however, that the complaint otherwise does not state a cause of action. The demurrer was overruled solely on the ground that the complaint sets out a proper case for a declaratory judgment. And the sole question for our determination is whether the trial court was right in holding that the complaint makes out a case for a declaratory judgment.

In order so to determine, consideration must be given to the provisions of the Uniform Declaratory Judgments Act. M. S. A. 555.01 thereof declares:

"Courts of record within their respective jurisdictions shall *have power to declare rights,* status, and other legal relations whether or not further relief is or could be claimed." (Italics supplied.)

Section 555.02 provides:

"Any person interested under a * * * written contract * * * *may have determined any question of* construction or *validity* arising under the * * * contract * * * and obtain a declaration of rights, status, or other legal relations thereunder." (Italics supplied.)

Sections 555.02 to 555.04 enumerate the powers of the court under the act; but § 555.05 states that such enumerated powers do "not limit or restrict the exercise of the general powers conferred in section 555.01, in any proceeding where declaratory relief is sought, in which judgment or decree will terminate the controversy or *remove an uncertainty."* (Italics supplied.) Finally § 555.12 provides:

"This chapter is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect

to rights, status and other legal relations; and is to be liberally construed and administered."

Defendant points out that under the allegations of the complaint there has been no default by him; and, since it is not certain that defendant would have defaulted, plaintiff is presenting a hypothetical case and asking for an advisory opinion. We have already said that the complaint pleads no default. We have already quoted § 555.01, which states that courts of record shall have power to declare rights whether or not further relief is or could be claimed; and § 555.02, which provides that any person interested in a written contract may have determined any question of validity arising under the contract and obtain a declaration of rights thereunder. Section 555.03 declares that a contract may be construed either before or after there has been a breach thereof. That is not to say that the validity of a contract may not be determined before there is a breach thereof. In view of the statutes above quoted, there can be no doubt that plaintiff need not wait until there has been a breach of the contract before she may seek a determination of its validity.

Defendant further claims that denial of liability under the contract and the question of its validity were mere matters of conversation, which cannot be taken as seriously attacking the validity of the contract unless defendant actually refuses to perform. By his demurrer, he has admitted that he informed plaintiff that he would make no further payments, pursuant to the contract or otherwise, and in fact he has made no payments since February 1949; and that he also informed plaintiff that the contract was not a valid or subsisting contract. Although defendant was justified in refusing to pay ahead of the due date, where he does so refuse in conjunction with statements that he does not have any further obligation to pay, it is not open for him to argue that the refusal is not a serious one, and that plaintiff has no reason to believe that her rights are being denied by defendant. The allegations of nonpayment may be considered in connection with the allegations that defendant would make no further payment and that he had informed plaintiff that

the contract was not a valid or subsisting one as tending to support these allegations.

The cases cited by defendant in support of his argument were cases which hold that there was no basis for a declaratory judgment. Those cases are factually unrelated to the instant case, and the principles announced in them applied to the facts presented. For instance, in County Board of Education v. Borgen, 192 Minn. 512, 257 N. W. 92, the court held that there was no controversy, that defendants had no interest adverse to the interest of plaintiff, and that there was nothing for the court to adjudicate. We said that any opinion in that case would simply be an advisory one. In Seiz v. Citizens Pure Ice Co. 207 Minn. 277, 290 N. W. 802, the case was dismissed because the complaint demanded an advisory opinion as to the plaintiff's right to benefits if he should, in the future, and upon the occurrence of certain events, become unemployed. It was further held that the parties were not adverse in interest.

Defendant also cites the recent Wisconsin case of Skowron v. Skowron, 259 Wis. 17, 20, 47 N. W. (2d) 326, 327, where that court held that it "should not anticipate that either situation will occur but should wait until the event giving rise to rights has happened." The statute deals with present rights only. In the instant case, we are dealing with a present right. The event giving rise to the right has happened. Here, payments do not depend upon a future contingency as in the Skowron case.

In the instant case, plaintiff prays for a declaration of the present existing relationship between the parties, by reason of the contract, and for a declaration of the duties and obligations of defendant, both now and in the future, which are the consequences of the existing relationship. The purpose of the statute is to "afford relief from uncertainty and insecurity with respect to rights, status and other legal relations" (§ 555.12), and to permit the settling of disputes concerning written instruments without first requiring "destruction of the status quo and of the social and economic fabric." Borchard, Declaratory Judgments, Appendix (2 ed.) p. 1048; Borchard, *The Uniform Declaratory Judgments Act*, 18 Minn. L. Rev. 239, 257,

*et seq.* It is a present uncertainty and insecurity with respect to plaintiff's right under the contract that is here involved, and the court is asked to give declaratory relief.

In the instant case, the allegations are that defendant stated that he will make no more payments, pursuant to the contract or otherwise; that he has made no payments since February 1949, and that he has informed plaintiff that the contract is not a valid and subsisting contract. Those pleaded facts definitely indicate that there is an actual controversy between the parties. There is a real issue between them. The actual controversy is not one that will arise in the future upon the happening of a certain contingency, but is a controversy over a present right. Plaintiff is interested in establishing the contract as a good and valid subsisting contract. The court has the power to declare such right; and, under the statutes, plaintiff, as an interested party, may have determined the question of validity arising under the contract and ask for a judgment or decree which will remove the uncertainty and insecurity. In Borchard, Declaratory Judgments (2 ed.) p. 27, the author states:

"* * * he [plaintiff] need merely show that some legal interest or right of his has been placed in jeopardy * * * by denial, * * *."

And in State ex rel. Smith v. Haveland, 223 Minn. 89, 25 N. W. (2d) 474, 174 A. L. R. 544, we said that complainant must, as a minimum requirement, possess a bona fide legal interest which has been, or with respect to the ripening seeds of a controversy is about to be, affected in a prejudicial manner. In our opinion, the complaint states a cause of action under the declaratory judgments act. In Seiz v. Citizens Pure Ice Co. 207 Minn. 277, 281, 290 N. W. 802, 804, *supra,* we said:

"Proceedings for a declaratory judgment must be based on an actual controversy. The controversy must be justiciable in the sense that it involves definite and concrete assertions of right and the contest thereof touching the legal relations of parties having adverse interests in the matter with respect to which the declaration is sought, and must admit of specific relief by a decree or judg-

ment of a specific character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

The pleaded facts, which defendant by his demurrer admits, brings this case within the coverage of the declaratory judgments act.

Order affirmed.