IZAAK WALTON LEAGUE OF AMERICA ENDOWMENT, INC. v. STATE, DEPARTMENT OF NATURAL RESOURCES.

252 N. W. 2d 852.

March 18, 1977—No. 46878.

*Warren Spannaus,* Attorney General, and *Donald J. Paquette,* Special Assistant Attorney General, for appellant.

*Popham, Haik, Schnobrich, Kaufman & Doty, Raymond A. Haik,* and *James R. Steilen,* for respondent.

*Babcock, Locher, Neilson & Mannella, James M. Neilson, Bruess, Hamerston, Bye & Boyd, Charles H. Andresen, David P. Sullivan* and *George Maloney,* amici curiae, seeking reversal.

*Warren Spannaus,* Attorney General, |C. |Paul Faraci, Deputy Attorney General, *Philip J. Olfelt,* Assistant Attorney General, and *Steven G. Thorne,* Special Assistant Attorney General, for Attorney General, amicus curiae, seeking affirmance.

Heard before Sheran, C. J., and Rogosheske, Peterson, Kelly, Todd, Scott, and Stahler, JJ., and considered and decided by the court en banc.

### Per Curiam.

The State of Minnesota, Department of Natural Resources (DNR), appeals from a summary judgment entered in district court ordering specific performance by the state of a contract for the purchase of certain real estate owned by plaintiff, Izaak Walton League of America Endowment, Inc. (League).

The factual posture of this case, for the most part stipulated, is uncomplicated. The League owns in fee certain land located in Itasca County, Minnesota. Title to that realty was acquired from the state through the Commissioner of Revenue pursuant to Minn. St. 282.01 to 282.12, governing the sale of tax forfeited land. The abstract of title to the property reveals that prior to 1941 the land had been owned by one August Grandsinger. In that year the real estate taxes became delinquent and proceedings were initiated to enforce payment. Judgment was entered in those proceedings on March 13, 1941.

On December 17, 1949, there was filed a certificate of forfeiture pursuant to Minn. St. 281.23, subd. 8. That certificate recites the details of the tax forfeiture proceedings and indicates that the period of redemption expired without redemption being made. No other facts regarding the forfeiture proceedings appear of record. Some, if not all, of the Itasca County Auditor's records pertaining to the tax forfeiture were destroyed pursuant to court order in 1970.

Title to the property vested in the state upon the expiration of the redemption period. On May 2, 1975, the League purchased the property in order to retain and protect it until such time as the appropriate

public agency determined to obtain the property for wildlife habitat. The League received a tax deed from the Commissioner of Revenue. Thereafter, the Commissioner of Natural Resources sought to acquire the land pursuant to Minn. St. 97.481 for wildlife purposes, and 7 months after the League had purchased the property, the DNR entered into an option contract to buy the property back from the League. '

The option contract requires the League to "give a good and marketable title in fee simple to said property, free and clear of all taxes and encumbrances, and [to]convey the same by warranty deed." By letter dated December 8, 1975, the DNR exercised its option. By letter dated December 15, 1975, the DNR objected to the state of the title held by the league, stating that it was not marketable title in that it depended upon a tax judgment sale certificate less than 40 years old. The League then commenced this action to compel specific performance of the contract.

The district court found the title to be marketable and ordered judgment requiring the state to perform the option contract. The state (DNR) appeals from that judgment. We dismiss the appeal for failure to present a justiciable controversy.

The existence of a justiciable controversy is prerequisite to adjudication. The judicial function does not comprehend the giving of advisory opinions. No controversy is presented, absent a genuine conflict in the tangible interests of opposing litigants. Because the existence of a justiciable controversy is essential to this court's exercise of jurisdiction, it may always raise the issue on its own motion. County Board of Education v. Borgen, 192 Minn. 512, 257 N. W. 92 (1934); Seiz v. Citizens Pure Ice Co. 207 Minn. 277, 290 N. W. 802 (1940); State ex rel. Smith v. Haveland, 223 Minn. 89, 25 N. W. 2d 474, 174 A. L. R. 544 (1946); Arens v. Village of Rogers, 240 Minn. 386, 61 N. W. 2d 508 (1953), appeal dismissed, 347 U. S. 949, 74 S. Ct. 680, 98 L. ed. 1096 (1954).

The parties entered into the purported contract at issue less with the intent that it be performed than with the purpose of creating a vehicle by which the parties could gain a judicial statement regarding the general marketability of tax titles. At oral argument it was made clear that the League was aware of the state's longstanding policy of objecting to tax titles as being unmarketable. Moreover, the League was unquestionably aware of the status of the title since it received its deed from the Commissioner of Revenue. As another indication of the lack of real controversy in this action, the League at no time asserted any claim that the state should be estopped from objecting to title because of the structure of the transaction.

For its part, the state has assumed the anomalous posture of appearing through the office of the attorney general as the appellant, seeking

reversal of the lower court's order, and as an amicus curiae, seeking affirmance. Although we ourselves erred in granting the state's application to appear as an amicus in these circumstances, the fact that the application was even made underscores the absence of real controversy and, instead, the basic purpose of seeking an advisory opinion.

We are aware that the marketability of tax titles, and their validity generally, is a topic of much concern to the profession and to the public. The state has a strong interest in being able to collect taxes due it by a sure and final method. The current statutory scheme does not in unmistakable terms provide that desired measure of certainty and finality. See, Note, 1 Wm. Mitchell L. Rev. 1. The possible or preferred solutions, however, are more properly directed to the legislature. Legislation has in the past been proposed or undertaken in the legislature to limit even more the possible grounds of challenge to the validity of tax forfeiture proceedings and to restrict the period of time within which claims of invalidity may be asserted, subject to any constitutional limitations.[1] The statutory scheme is complex, and the variety of factual situations in which objections might arise may well be many. Whereas the legislature may anticipate and deal with these practical considerations in a comprehensive way and consistent with a fundamental determination of public policy, this court is confined to a more fragmentary determination on a case-by-case basis in the context of the specific facts of a case and a clear expression of legislative intent.

We accordingly dismiss the appeal and remand to the district court for reconsideration consistent with this opinion.

---

[1] The determination of what claims to real property should be barred by statutory limitations as to permissible grounds for asserting those claims, or the time for bringing such claims, is primarily for legislative, not judicial, determination. The restraints upon such legislation, and tax forfeiture proceedings generally, are only those imposed by the state and Federal constitutions, which require that such statutes comport with the requirements of due process of law. See, Saranac Land, & c., Co. v. Comptroller of N. Y. 177 U. S. 318, 20 S. Ct. 642, 44 L. ed. 786 (1900); Wichelman v. Messner, 250 Minn. 88, 83 N. W. 2d 800 (1957). See, also, Pearson v. Dodd, 429 U. S. 396, 97 S. Ct. 581, 50 L. ed. 2d 574 (1977).