CULLIGAN SOFT WATER SERVICE OF INGLEWOOD, INC., et al., Respondents,

v.

CULLIGAN INTERNATIONAL COMPANY, a corporation, formerly known as Culligan, Inc., Appellant.

No. 48334.

Supreme Court of Minnesota.

Aug. 24, 1979.

O'Connor & Hannan, Joe A. Walters, and Frank J. Walz, Minneapolis,. for appellant; Pollak & Welsh and B. L. Pollak, Chicago, Ill., of counsel.

Gray, Plant, Mooty, Mooty & Bennet, James S. Simonson, and Edwin C. Carpenter, Minneapolis, for respondents.

Heard before PETERSON, KELLY and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.

This appeal arises from an action for a declaratory judgment filed in the District Court of Hennepin County. At trial, plaintiffs sought a judicial determination that certain provisions of a franchise agreement entered into by plaintiff Culligan Soft Water Service of Inglewood, Inc. (Inglewood) and defendant Culligan International Company (Culligan) required defendant to consent to the transfer of the franchise to plaintiff United States Water Company (U.S. Water). After a 7-day trial, the trial court held that the controversy was justiciable, that the right of first refusal agreement between plaintiffs was not a breach of the franchise agreement, and that Culligan's refusal to consent to the assignment of the franchise agreement was unreasonable. We affirm.

Culligan is a large international company incorporated in Delaware with its principal place of business in Northbrook, Illinois. It is engaged in the manufacture and distribution of a wide range of water quality improvement products. Within the United States, Culligan U.S.A., a division of Culligan, is responsible for the distribution of Culligan products through a network of franchised Culligan dealers.

The legal relationship between Culligan and its dealers is set out in a franchise agreement which is executed by Culligan as the franchisor and the dealer as the franchisee. Over the course of the years, the form of these franchises has varied somewhat, but generally the franchise grants the dealer the right to sell and service Culligan products, to employ its trade name, trademarks and copyrights in return for the dealer's agreement to purchase Culligan products and services, and to meet and maintain certain quality and operational standards. Culligan receives no franchise fees or royalties from its franchisees but relies entirely upon dealer purchases of products for its revenue.

In addition to manufacturing Culligan products, Culligan operates a consumer division which is responsible for managing 31 franchised dealerships which are wholly-owned corporate subsidiaries. These dealerships are parties to a current franchise and operate under similar conditions as the independent franchisees.

U.S. Water is a Delaware corporation, founded in 1966 by a group of Culligan dealers for the purpose of acquiring Culligan franchises. The organizers were individuals who themselves owned or controlled one or more Culligan dealerships. As a condition of stock ownership, stockholders are required to execute a "first refusal agreement" with U.S. Water which it could exercise in the event of any sale or other disposition of the franchises.

Plaintiff Robert Moody is the owner of two Culligan dealerships. The dealership that is relevant in this dispute is located in Inglewood, California, and is the subject of an offer to purchase made by U.S. Water pursuant to its right of first refusal. Moody is one of the original founders of U.S. Water and at the time of trial was a stockholder and member of the board of directors.

When Moody originally decided he wished to sell his franchise, he contacted Sam Marotta, a close personal friend, who was also the executive vice president of finance for Culligan. They discussed the possibility of Moody selling Inglewood to Culligan. Marotta entered into lengthy negotiations with Moody which ultimately resulted in a satisfactory purchase agreement.

When Moody received Culligan's offer to purchase, he immediately forwarded it to U.S. Water which then made the identical offer to Moody who accepted. Shortly thereafter, U.S. Water sent Moody a "supplement to offer to purchase" which made the sale contingent on Moody obtaining from Culligan written consent to transfer the franchise. This was in accordance with the franchise agreement which made Culligan's written consent a prerequisite to any assignment of the franchise. In his response, Moody expressed his understanding of the new provision thusly:

"Pursuant to our conversation of 12–30–76 (phone), I am writing this letter to clarify my only two points of concern in your 'Supplement To Offer To Purchase', and am attaching it to a signed copy indicating *our* understanding of how my concerns will be resolved, the use of such offer being conditioned upon this understanding:

"First, re: Paragraph 2, a. I am willing to use my 'best efforts' and will do so as I promised you on the phone, but, firstly, I will expect (to which you offered) that any legal fees and expenses involved in defending the franchise or perfecting rights thereto would be paid by U.S. Water, whether prosecuted or defended by U.S. Water and/or the seller, and secondly, no right shall exist to void the sale."

This letter was approved by U.S. Water, and Moody was returned a fully executed copy of the supplement.

In the meantime, Moody had notified Culligan of U.S. Water's exercise of its first refusal rights on Culligan's offer and requested Culligan's consent to the assignment.

During 1976, Culligan introduced a policy requiring that the current form of franchise agreement be executed in connection with dealership transfers. Thus, when its consent to the assignment was requested, Culligan asked U.S. Water to accept the current franchise.[1] This request was refused.

Culligan and U.S. Water subsequently met on several occasions in an attempt to negotiate the resolution of this matter. No progress was made, and this suit followed.

1. The first issue raised by appellant is whether the letter from Moody to U.S. Water providing that the sale could not be voided negated any condition precedent which may have existed at the time of the original agreement and therefore vitiated the "actual controversy" which is a prerequisite to a declaratory judgment. Defendant reasons that because of the side agreement which was incorporated into the original purchase agreement, the sale was a "done deal" and not the appropriate subject of a declaratory relief. Plaintiffs argue that the letter had no such effect. We need not become involved in this debate because notwithstanding the effect of the side agreement, the complaint need not be dismissed for want of a justiciable controversy.

In Minnesota, declaratory judgments are provided for in Rule 57, Rules of Civil Procedure, and codified at Minn.St. c. 555.[2] In actuality, declaratory judgments are not a new form of action at all but merely provide a new remedy. 22 Am.Jur.2d, Declaratory Judgments, § 6.

The policy behind the creation of declaratory judgments is to allow parties to determine certain rights and liabilities pertaining

---

1. The primary differences between the 1957 franchise and the one currently in use relates to performance standards. While the 1957 franchise merely requires best efforts on the part of the franchisee to promote and service Culligan products, the current franchise utilizes specific performance standards for each individual franchise. Failure to meet the set standards may be cause for termination. In addition, the current franchise has a duration of 5 years but is renewable by the franchisee. The 1957 franchise did not terminate upon completion of any particular term.

2. The franchise agreement here provides that all controversies between the parties are to be settled in accordance with the laws of the State of Illinois. With respect to procedural issues, however, we will utilize the laws of this state. See, Restatement, Conflict of Laws (2d), §§ 124, 127; Leflar, American Conflicts Law, § 121.

to an actual controversy before it leads to repudiation of obligations, invasion of rights, and the commission of wrongs.

In the instant case, the pleadings allege the necessity of a declaratory judgment to ascertain whether the defendant's refusal to consent to the assignment was reasonable or not in an attempt to establish the parties' respective legal positions before closing the deal or creating binding commitments which could be detrimental.

Merely because a plaintiff prays for declaratory relief, however, does not limit the relief that the court may extend nor affect its jurisdiction. Rule 54.03, Rules of Civil Procedure, provides in part:

> "Except as to a party against whom a judgment is entered by default, every other judgment shall grant the relief to which the party in whose favor it is rendered is entitled."

Because an actual controversy exists as to the matter of consent, whether or not the purchase agreement is absolute or conditional, Rule 54.03 allows the court to properly grant the appropriate relief. Accord, *Jackson v. Straabe*, 150 Minn. 329, 185 N.W. 290 (1921). Therefore, because the trial court had already acquired proper jurisdiction over defendant, its adjudication of the issue was not improper.

2. The assignment provisions of the Inglewood Service Dealer provide in part as follows:

> "[N]either this Agreement nor any of its rights and privileges shall be assigned, transferred, shared or divided, * * * in any manner, without prior written consent of CULLIGAN * * *."

The first refusal agreement which Moody signed on behalf of Inglewood states in part:

> "[Inglewood] shall not, directly, or indirectly, sell transfer or assign all or any substantial part of [its] rights in or to a Culligan franchise business * * * nor shall [it], directly or indirectly, sell, transfer or assign any of [its] Culligan, Inc. franchises without first submitting to [U.S. Water] an offer to sell said property and/or franchise or franchises.

> "[Inglewood] agrees that during the term of this agreement, [it] shall not surrender or voluntarily forfeit any Culligan, Inc. franchise, unless at least thirty (30) days prior to the termination or surrender of any such franchise [it] shall have notified [U.S. Water] of [its] intentions and offered to assign to [U.S. Water] without charge all [its] rights, title and interest in and to the said Franchise."

Culligan asserts that this right of first refusal constituted a breach of the franchise, providing a defense to Culligan's refusal to consent to the transfer. In addition, Culligan contends that this breach affords an independent justification to withhold consent.

The trial court held that no breach occurred because a right of first refusal "* * * is a protective right and does not convey any part of the franchise." We agree. In *Turner v. Shirk*, 49 Ill.App.3d 764, 766, 7 Ill.Dec. 461, 463, 364 N.E.2d 622, 624 (1977), the court, in ruling on the nature of a first right of refusal, declared that it

> "involves the creation of a privilege * * to buy only on the formulation of a desire by the owner to sell upon the terms and price at which the owner is willing to sell to a third party."

By entering into the first refusal agreement, Inglewood has in no way prejudiced Culligan's rights. Culligan may still refuse to consent to the transfer and assuming the refusal is reasonable prevent the transfer. U.S. Water, on the other hand, has received no property interest in the franchise but merely an opportunity, in the nature of an option, which may be exercised, providing it meets the terms of the offer and can obtain the franchisor's consent under the very terms and conditions of the franchise. Obviously, no sale or transfer of assignment could take place until the consent of Culligan was obtained voluntarily or by order of the court.

3. The last issue raised on this appeal concerns defendant's refusal to consent to Moody's request to transfer his franchise to U.S. Water.

The trial court's comments in its memorandum seem to be a suitable preface to a discussion of this issue:

"During the trial of this case substantial evidence was developed from witnesses all of whom the court found to be knowledgeable and sophisticated businessmen of years of experience in the soft water business engaged in by all of the parties. In addition to the oral testimony substantial documentary evidence was introduced by both parties.

"It seemed apparent to this Court from the very outset that the real controversy between the parties centered around the desirability of obtaining a transfer of the 'old or 1957 Franchise Agreement' to U.S. Water by Inglewood as opposed to extending to U.S. Water a new or 'current franchise' which Defendant, Culligan International, was willing to grant. Without detailing the advantages of the 'old franchise' over the 'current franchise' it was most evident that the current franchise was much more restrictive and was by its terms much more favorable to the Culligan International (franchisor) than the old franchise. Since the original or 1957 franchises had been granted to its dealers, Culligan International had opened a 'consumers division' made up of wholly owned Culligan International dealer outlets. Defendant evidenced concern over the growing strength of U.S. Water and its acquisition of Culligan dealerships throughout the United States. Documentary evidence reflected that Culligan International considered U.S. Water as a growing 'threat' to its operations.

"By the use of the 'current franchise' on new dealerships, especially if they were U.S. Water newly acquired dealerships, the franchisor, Culligan International, could more effectively control them by imposing quotas on sales and purchases, et cetera, as provided in the current franchises. Such control was not provided for in the 1957 franchise sought to be acquired by U.S. Water from the Inglewood dealer."

The provision of the service dealer franchise agreement which is applicable to the issue of consent is § 6.12, which is set out below:

"This Agreement is being entered into in reliance upon and in recognition of Robert L. Moody the SERVICE DEALER or partner(s) in the dealership or representative(s) of the SERVICE DEALER who actively and substantially participate(s) in the ownership and/or operation of the dealership. Therefore, neither this Agreement nor any of its rights and privileges shall be assigned, transferred, shared or divided, by operation of law or otherwise, in any manner, without prior written consent of CULLIGAN; nor shall any interest in the ownership, financial interest or active management of SERVICE DEALER be changed or transferred, without the prior written consent of CULLIGAN. CULLIGAN agrees not to withhold the aforesaid consent in the event the proposed party or parties, in the reasonable determination of CULLIGAN, are financially qualified, without conflicting interest, and possess the essential personal qualifications and business competence, skill, integrity and character for successfully performing the functions of a SERVICE DEALER pursuant to this Agreement."

The trial court found that U.S. Water met the qualifications listed in § 6.12 and that therefore Culligan's refusal to consent was unreasonable.

Culligan contends that the trial court failed to apply the correct standard and burden of proof and failed to adequately address the merits of Culligan's listed objections to the transfer.

As in any civil case, the plaintiff here has the ultimate burden to prove its case by a preponderance of the evidence. *Arrington v. Walter E. Heller Int'l. Corp.*, 30 Ill. App.3d 631, 333 N.E.2d 50 (1975). In this case, the conflict arose in determining what must be shown to meet that burden. The trial court reasoned that if the plaintiff, U.S. Water, could show by a preponderance of the evidence, that it possessed reasonable qualifications, it would have satisfactorily

met its burden. Culligan urges that this ruling erroneously disregards the language of the franchise which provides that Culligan may "not withhold consent if, in the reasonable determination of Culligan [the proposed party or parties] *are financially qualified, without conflicting interest, and possess the essential personal qualifications and business competence, skill, integrity and character for successfully performing the functions of a SERVICE DEALER * * *.*" (Italics supplied.)

Although we grant that the language of the franchise agreement does allow Culligan to utilize some discretion in making its decision, we cannot ignore the remainder of the language in that provision. The franchise agreement, drafted by Culligan, lists specifications by which a prospective franchisee may be judged. Based on those specific criteria, the trial court found that U.S. Water was well qualified to assume the franchise and that Culligan's refusal was unreasonable. Such findings will not be disturbed by this court unless they are clearly erroneous. Rule 52.01, Rules of Civil Procedure. After a review of the record, we believe that there was sufficient evidence introduced to sustain the findings of the trial court.

For the above reasons, we affirm the decision of the district court.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.