John Remington **GRAHAM,** Crow Wing County Attorney, Appellant,

v.

**CROW WING COUNTY BOARD OF COMMISSIONERS, et al., Respondents.**

No. C1–93–1920.

Court of Appeals of Minnesota.

April 19, 1994.

Review Denied June 2, 1994.

Fitzpatrick to negotiate union contracts and provide advice on labor relations matters. Graham sought an injunction to prevent (a) the board from employing outside counsel without his consent, and (b) Fitzpatrick from providing legal services to the board.

All parties moved for summary judgment claiming the sole issue before the trial court was the construction of two statutes. The trial court issued findings of fact, conclusions of law, and an order for judgment in favor of the board and Fitzpatrick. Graham moved to vacate the judgment, and, in the alternative, for an amended judgment to protect the county attorney's rights against future intrusions by the board. *See* Minn.R.Civ.P. 60.02 (providing the conditions under which a court may relieve a party from a final judgment); Minn.R.Civ.P. 52.02 (providing that a court may amend its findings or make additional findings upon motion of a party). The trial court denied both motions. On appeal, Graham argues the trial court erred by (1) not granting him a declaration of the circumstances under which a board can hire outside counsel, and (2) finding the board acted within its authority in hiring Fitzpatrick. We affirm.

## FACTS

Since 1985, the board has employed Fitzpatrick to negotiate union contracts and provide legal advice on labor relations issues. Professional union representatives represent most county employees in contract negotiations. The vast majority of boards from other counties also employ outside attorneys to negotiate union contracts and provide advice on issues under the Public Employment Labor Relations Act (PELRA), Minn.Stat. §§ 179A.01–179A.30. (1992 & Supp.1993).

Fitzpatrick has practiced in the area of labor relations since 1972. He has negotiated approximately thirty-six union contracts on behalf of the county. Through his efforts, he obtained a standardized cap on the county's contribution toward employee health insurance, eliminated severance pay for employees hired after 1986, and helped bring union contracts into compliance with comparable worth requirements. In addition, Fitz-

John R. Graham, Crow Wing County Atty., Brainerd, for appellant.

Richard L. Pemberton, Corenia A. Kollasch, Pemberton, Sorlie, Sefkow, Rufer & Kershner, Fergus Falls, for respondents.

Considered and decided by ANDERSON, P.J., and SHORT and KLAPHAKE, JJ.

## OPINION

SHORT, Judge.

This declaratory judgment action involves a county attorney's right to provide legal services to a county board of commissioners. Crow Wing County Attorney John Remington Graham challenges the Crow Wing County Board's practice of employing Thomas

patrick represented the county in a lawsuit brought by Graham. Fitzpatrick does not consult with the county attorney's office about the legal work he performs for the board.

For years, Fitzpatrick's law firm represented the Brainerd School District and performed the civil work of the Brainerd City Attorney. Since 1991, the firm has also prosecuted misdemeanors for the city. Fitzpatrick was appointed the Brainerd City Attorney in early 1993. But the city's personnel and labor relations matters are not handled by Fitzpatrick; the city employs a labor relations specialist from Coon Rapids. The board and the city council know Fitzpatrick does legal work for both entities.

Graham was elected Crow Wing County Attorney in November of 1990. After his election, Graham represented the interests of his office staff against the board's interest in several budget appeals and in a discrimination lawsuit. In 1992, Graham objected to Fitzpatrick negotiating employee contracts and giving any legal advice to the board. The board rejected Graham's request that it use him rather than Fitzpatrick for these services.

## ISSUES

I. Did the trial court err by refusing to grant a declaratory judgment describing in general terms a board's authority to hire outside counsel?

II. Did the board act within its statutory authority when hiring Fitzpatrick?

## ANALYSIS

■■■ On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988); *see* Minn.Stat. § 555.07 (1992) (an order in a declaratory judgment action is reviewed as any other order). While it is unusual for a trial court to issue findings of fact in response to cross-motions for summary judgment, the parties agree that there are no material facts in dispute. The issue

on appeal involves the construction of a statute which is a legal question and subject to de novo review. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

## I.

■■■ A court has no jurisdiction to render a declaratory judgment in the absence of a justiciable controversy. *St. Paul Area Chamber of Commerce v. Marzitelli,* 258 N.W.2d 585, 587 (Minn.1977). To be justiciable, a controversy must *(a)* involve definite and concrete assertions of right by parties with adverse interests, *(b)* involve a genuine conflict in tangible interests of opposing litigants, and *(c)* be capable of relief by a decree or judgment. *Id.* at 587–88 (citing *State ex rel. Smith v. Haveland,* 223 Minn. 89, 92, 25 N.W.2d 474, 477 (1946); *Seiz v. Citizens Pure Ice Co.,* 207 Minn. 277, 281, 290 N.W. 802, 804 (1940)); *see also* Minn.Stat. § 555.06 (court may refuse to enter a declaratory judgment where judgment would not terminate the uncertainty or controversy giving rise to the proceeding). The existence of jurisdiction is a question of law subject to de novo review. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

Graham seeks a declaratory judgment describing the conditions under which a board can hire outside counsel. That requested relief lacks the essential elements of a justiciable controversy. The judgment Graham seeks consists essentially of statutory language embellished with additional language generally describing the board's authority; it does not refer to the situation underlying the case at hand. The requested relief is not a definite assertion of Graham's rights; it does not involve a genuine conflict of tangible interests and would not end the live controversy. The uncertainty underlying this lawsuit would remain because the general language of the judgment would still have to be applied to specific facts. Under these circumstances, the trial court properly limited its decision to whether the board could hire Fitzpatrick for advice on labor relations matters without Graham's consent.

## II.

 Minn.Stat. § 388.09 sets forth the circumstances under which a board may hire an attorney in place of the county attorney.

> When there is no county attorney, the county board may employ any competent attorney to perform legal services for the county. The board may employ an attorney to assist the county attorney, to appear for the county or any county officer in any action in which the county or officer in an official capacity is a party, to advise the board or its members in relation to the action, or in relation to any other matter affecting the interests of the county. The county may pay the attorney out of the funds of the county.

*Id.* § 388.09, subd. 1 (1992). The statute unambiguously permits the board to employ outside counsel to *(a)* assist the county attorney, *(b)* appear of record for the county or any county officer, and *(c)* advise the board. *Peterson v. Koochiching County*, 133 Minn. 343, 344, 158 N.W. 605, 605 (1916); *see* Minn. Stat. § 645.44, subd. 15 (1992) ("may" is permissive when used in statutes). The statute does not authorize the board to eliminate the county attorney by employing counsel to do work specifically assigned by statute to the county attorney. *Keiver v. Koochiching County*, 141 Minn. 64, 67, 169 N.W. 254, 255 (1918); Op. Att'y Gen. 121-A (June 2, 1970). If the work involved has been assigned by statute to the county attorney, the board may hire another attorney only *(a)* in extraordinary occurrences, *(b)* for a limited purpose, and *(c)* when the county attorney is unable to render effective legal service. *Keiver,* 141 Minn. at 67, 169 N.W. at 255-56. The board has discretion to determine when such an occasion arises, and we will not reverse a board's decision to hire outside counsel absent an abuse of that discretion. *Id.* at 67, 169 N.W. at 255. The party challenging a board's decision has the burden of showing that no proper occasion existed for the employment. *Id.* at 69, 169 N.W. at 256.

Fitzpatrick was hired by the board to give legal advice regarding labor relations matters. That responsibility is not a statutory duty belonging directly to the county attorney.

The county attorney shall:

(a) Appear in all cases in which the county is a party;

(b) Give opinions and advice, upon the request of the county board or any county officer, upon all matters in which the county is or may be interested, or in relation to the official duties of the board or officer;

(c) Prosecute felonies, including the drawing of indictments found by the grand jury, and, to the extent prescribed by law, gross misdemeanors, misdemeanors, petty misdemeanors, and violations of municipal ordinances, charter provisions and rules or regulations;

(d) Attend before the grand jury, give them legal advice and examine witnesses in their presence;

(e) Request the court administrator to issue subpoenas to bring witnesses before the grand jury or any judge or judicial officer before whom the county attorney is conducting a criminal hearing;

(f) Attend any inquest at the request of the coroner; and

(g) Appear, when requested by the attorney general, for the state in any case instituted by the attorney general in the county attorney's county or before the United States land office in case of application to preempt or locate any public lands claimed by the state and assist in the preparation and trial.

Minn.Stat. § 388.051, subd. 1 (1992). Graham has a statutory duty to give advice only when the board asks for his assistance. *Id.* at subd. 1(b). It is undisputed that the board has not sought his advice or the advice of the previous county attorney on union contracts or PELRA matters; Fitzpatrick has done the county's PELRA work for nine years. Nothing in Minn.Stat. § 388.051 limits the board's statutory right under section 388.09 to retain Fitzpatrick for advice on labor relations matters. If the board is misusing taxpayer funds for additional legal services, the election process should remedy

the matter; the judiciary should not become a referee in this disagreement between the board and the county attorney.

■ Graham argues the circumstances do not justify the board's retention of Fitzpatrick. *See Keiver,* 141 Minn. at 68, 169 N.W. at 256 (the statute does not authorize employment of a special county attorney to give general advice, to appear on behalf of the county, and to commence and prosecute actions as he or she sees fit). Because we conclude giving advice on labor matters is not a statutory duty of the county attorney, we need not analyze whether special circumstances exist. But even if the limitations set forth in *Keiver* were to apply to the board's retention of Fitzpatrick, we would conclude that a proper occasion exists for the employment. The record demonstrates *(a)* the board retained Fitzpatrick for the limited purpose of providing advice on PELRA-type issues, *(b)* PELRA involves a specialized area of law, *(c)* Graham admitted he had no expertise in labor relations matters, *(d)* Fitzpatrick is a seasoned labor lawyer with nine years of experience with the board's union contracts and PELRA matters, and *(e)* Graham recently represented his employees in lawsuits involving budget and salary disputes against the board. *See* Minn.R.Prof. Conduct 1.7(b) (an attorney shall not represent a client without the client's consent, if the representation is materially limited by the attorney's other interests), 2.1 (an attorney shall exercise independent judgment). Given these undisputed facts, we cannot say the board abused its discretion in retaining Fitzpatrick to give legal advice on labor relations matters. Graham failed to demonstrate the absence of special circumstances.

■ Graham also argues the board cannot hire Fitzpatrick without his consent. We disagree. There is no language in Minn.Stat. § 388.09, subd. 1 which requires the board to obtain Graham's consent when hiring outside counsel. In contrast, Minn.Stat. § 388.09, subd. 2 specifies that the board "with concurrence of the county attorney" may enter into agreements with lawyers to prosecute cases. *Id.* The absence of that language in subdivision 1 prevents the construction proposed by Graham. *See United States v. Lamere,* 980 F.2d 506, 513 (8th Cir.1992) (where language is included in one section of a statute but omitted from another, it is generally presumed that the omission was purposeful).

## DECISION

While a board cannot circumvent a county attorney, the Crow Wing County Board of Commissioners did not exceed the authority granted in Minn.Stat. § 388.09 by hiring outside counsel to perform certain limited functions not assigned by statute to the county attorney.

**Affirmed.**

ANDERSON, Chief Judge (concurring specially).

I agree with the majority, but write separately because it is unnecessary to employ a statutory analysis to affirm the trial court's decision. The undisputed facts show that a "special case" or "extraordinary occurrence," as described in *Keiver v. Koochiching County,* 141 Minn. 64, 67, 169 N.W. 254, 255 (1918), arose in Crow Wing County. The board therefore acted within its discretion by hiring outside counsel for the limited purpose of providing legal advice on labor relations matters.

KLAPHAKE, Judge (concurring in part and dissenting in part).

I concur in part with and dissent in part from the majority's opinion. I agree with the majority's conclusion that the general declaratory judgment sought by the county attorney presents no justiciable controversy. I further agree that the Crow Wing County Board acted within its authority in employing Thomas Fitzpatrick to provide labor relations advice on and to negotiate union contracts with the county attorney staff.

The issue on which I depart with the majority is whether the Crow Wing County Board is entitled to summary judgment authorizing it to employ attorney Thomas Fitzpatrick to negotiate union contracts and advise the board on labor matters involving all county employees. I would reverse because (1) Minnesota law limits the Board's authority to special cases and extraordinary circum-

stances when the county attorney is unable to perform and (2) except for labor matters involving the county attorney staff, whether the county attorney is able to perform is a disputed issue of fact.

It is true that Minn.Stat. § 388.09, subd. 1 (1992) authorizes the Board to employ an attorney "in a relation to any * * * matter affecting the interests of the Board." The Board's broad, permissive hiring authority, however, has been substantially limited by statutory construction.

In *Keiver v. Koochiching County*, 141 Minn. 64, 67, 169 N.W. 254, 255 (1918), taxpayers challenged a county board's payment to a "special county attorney" involved in the investigation of irregularity of county officers and in conducting civil litigation. Construing the predecessor to Minn.Stat. § 388.09, which had the same language "in relation to any other matter affecting the interest of the county," the supreme court said:

> The statute is designed to meet special needs or extraordinary occurrences, when the county attorney is unable, because of absence, illness, personal interests, or the legal difficulties involved, to render that effective service which the interests of the county or the public demand.

*Keiver*, 141 Minn. at 67, 169 N.W. at 255.

This statutory construction was not limited, as the majority suggests, to instances where the type of work involved is statutorily assigned to the county attorney. Not one word of *Keiver* so limits the construction given. Additionally, the employment in *Keiver* concerned investigating county officers' involvement in the construction of a judicial ditch. Employment of an attorney to investigate actions of other county officers has never been a statutory duty of the county attorney. The limitation the majority puts on the *Keiver* construction of Minn.Stat. § 388.09 is neither warranted by the language of the case or its facts.

That Minn.Stat. § 388.051, subd. 1 (1992) does not specifically direct the county attorney to negotiate union contracts for the Board or to give advice unless requested, is not determinative. The fact that the statute does not require the county attorney to do certain legal work does not authorize the Board to hire anyone to do such work. The issue is not what the county attorney is statutorily required to do, but rather what the county board is statutorily authorized to do.

Counties and county boards represent a limited form of government in the State of Minnesota. *State ex rel. Anoka County Airport Protest Committee v. Minneapolis–St. Paul Metro Airports Comm'n*, 248 Minn. 134, 143, 78 N.W.2d 722, 728 (1956). Counties are extensions of the state and have only such specific authority as the legislature has delegated to them. *Id.* The legislature has given the county board no specific statutory authority to hire attorneys except as is found in section 388.09.

The *Keiver* construction asks a clear question: Is the county attorney unable because of illness, absence, personal interest or the legal difficulties involved, to render effective service which the county demands? *See Keiver*, 141 Minn. at 67, 169 N.W. at 255. In the language of the *Keiver* court, "there must appear * * * some substantial reason why * * * additional heavy burdens [should be] placed upon the taxpayers by the employment of other attorneys." *Id.*

That the county attorney has sued the Board on his budget does not disqualify him from negotiating or giving labor advice involving employees or officers other than his own. Furthermore, that certain employees of the county have made claims against him does not conclusively show he has a personal interest in all personnel matters. Finally, the county attorney's inexperience in a particular legal matter does not automatically disqualify him from doing that type of legal work. The county attorney in this case stated his willingness to take continuing legal education courses involving labor law. On the record before us, whether the county attorney is unable to perform legal services remains a disputed fact question. Accordingly, summary judgment should be reversed and the fact issue should be tried.