RICE LAKE CONTRACTING CORPORATION, City of Two Harbors, Respondents,

v.

RUST ENVIRONMENT AND INFRASTRUCTURE, INC., GME Consultants, Inc., Appellants.

No. C2–95–2529.

Court of Appeals of Minnesota.

June 4, 1996.

Review Denied Aug. 20, 1996.

tories and requests for production of documents.

Gregory T. Spalj, Holly A. R. Hart, Mark A. Mortenson, Fabyanske, Svoboda, Westra & Hart, P.A., Minneapolis, for Respondent Rice Lake Contracting Corporation.

Larry M. Nord, Orman & Nord, Duluth, for Respondent City of Two Harbors.

Robert J. Huber, Dwight A. Larson, Leonard, Street & Dienard, Minneapolis, for Appellant Rust Environment and Infrastructure, Inc.

Thomas F. Nelson, Popham, Haik, Schnobrich and Kaufman, Ltd., Minneapolis, for Appellant GME Consultants, Inc.

Considered and decided by CRIPPEN, P.J., and SHORT and FOLEY, JJ.*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

CRIPPEN, Presiding Judge.

Appellants challenge the trial court order denying their motion to dismiss respondents' declaratory judgment action for lack of subject matter jurisdiction. We affirm.

## FACTS

This case arises from a contract between respondents City of Two Harbors and Rice Lake Contracting Corporation for the construction of improvements to the city's sewage treatment plant. After completing excavation for the improvements, Rice Lake demanded $2,166,750 above their estimated price, claiming unanticipated expense in performing the work. The city refused to pay and Rice Lake sued for breach of contract.

The city had engaged two consultants, appellants Rust Environment & Infrastructure and GME Consultants, to advise it in connection with the sewage project. When Rice Lake initiated its suit, the city filed a third-party complaint against Rust and GME, asserting that the consultants were bound to indemnify the city for any money owed Rice Lake. This lawsuit is still pending.

Attempting to simplify the suit, Rice Lake and the city entered into a settlement agreement that compromises the amount of the city's obligation to Rice Lake under the original construction contract. The parties agreed that the city would pay Rice Lake $200,000 immediately and would give Rice Lake a promissory note for the balance, payable only out of proceeds from the city's legal claims against Rust and GME. Finally, Rice Lake agreed to fund the city's suit against Rust and GME and exercise full control over the prosecution of the case.

Reluctant to activate the settlement agreement without knowing whether it might operate in some way to extinguish the city's claims against Rust and GME, respondents conditioned the agreement upon a declaratory judgment establishing its legal effect upon the city's third-party claims:

Upon execution of this Settlement Agreement, Rice Lake shall prepare, for joint submission by Rice Lake and Two Harbors, a declaratory judgment action seeking a declaration by the Court that the Settlement Agreement does not, as a matter of law, extinguish, bar or prohibit Two Harbors' claims against Rust and GME. If the court rules that the Settlement Agreement does extinguish, bar or prohibit Two Harbors' claims, and Rice Lake is unable to obtain immediate and final appellate review reversing the court then the parties shall be returned to the *status quo* as if this Agreement had not been entered into. If the court rules as a matter of law that the Settlement Agreement does not extinguish, bar or prohibit Two Harbors' claims against Rust and GME then this Settlement Agreement shall be fully effective and not subject to any other condition.

When respondents filed a complaint for declaratory relief pursuant to the settlement clause, appellants [1] moved to dismiss, contending that the trial court had no subject matter jurisdiction, that the court could not give an "advisory opinion" about the legal effect of a "hypothetical" agreement. Respondents argued that their settlement agreement was a fully developed contract, not hypothetical, and that the trial court was within its province under the Declaratory Judgment Act to determine the agreement's legal effect. The trial court held that it was not precluded from addressing respondents' declaratory judgment motion by lack of jurisdiction.

## ISSUE

Have respondents shown the kind of present controversy that makes appropriate the jurisdiction of the trial court for deciding their declaratory judgment claim?

## ANALYSIS

■ On appeal from a declaratory judgment, we apply a clearly erroneous standard to the factual findings, but review the trial court's determination of questions of law de

1. Technically, only Rust contested jurisdiction before the trial court, but GME has joined the contest on appeal.

novo. *Waste Recovery Coop. v. County of Hennepin*, 475 N.W.2d 892, 894 (Minn.App. 1991), *review denied* (Minn. Dec. 9, 1991). The existence of jurisdiction is a question of law subject to de novo review. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

## I.

■ Minnesota's declaratory judgment statute affords courts the power "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Minn.Stat. § 555.01 (1994). Parties to a contract may "have determined any question of construction or validity arising under the instrument." Minn.Stat. § 555.02 (1994). The only prerequisite for a court's exercise of jurisdiction in declaratory judgment actions is the presence of a "justiciable controversy." *Seiz v. Citizens Pure Ice Co.*, 207 Minn. 277, 290 N.W. 802 (1940); *Graham v. Crow Wing County Bd. of Comm'rs*, 515 N.W.2d 81, 84 (Minn.App.1994) *review denied* (June 2, 1994).

■ Justiciability generally requires (1) a genuine or present controversy (2) presented by persons with truly adverse interests and (3) capable of specific rather than advisory relief by a decree or judgment. *Graham*, 515 N.W.2d at 84. In declaratory judgment actions, the "present controversy" requirement of justiciability is viewed leniently and is satisfied if there is a controversy of "sufficient immediacy and reality" to warrant issuance of a judgment. *Holiday Acres No. 3 v. Midwest Fed. Sav. & Loan*, 271 N.W.2d 445, 448 (Minn.1978); *see also* Minn.Stat. § 555.12 (1994) (stating that declaratory judgment statute is remedial: "its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and [it] is to be liberally construed and administered"); *Harrington v. Fairchild*, 235 Minn. 437, 440–41, 51 N.W.2d 71, 73 (1952) (same).

■ As Minnesota courts have phrased it, a "ripening seeds" inquiry replaces the usual "present controversy" justiciability inquiry in declaratory judgment situations: if a declaratory judgment claimant possesses "a bone fide legal interest which has been, or with respect to the ripening seeds of a controversy is about to be, affected in a prejudicial manner," jurisdiction exists. *State v. Haveland*, 223 Minn. 89, 92, 25 N.W.2d 474, 477 (1946); *see also Holiday Acres*, 271 N.W.2d at 448; *Minneapolis Fed'n of Men Teachers v. Board of Education*, 238 Minn. 154, 157, 56 N.W.2d 203, 205 (1952).

## II.

■ The "ripening seeds" standard is fulfilled prior to the final conclusion of a contractual relationship where it would be "unwarranted and unrealistic" in today's marketplace to expect parties to finally conclude their contract without judicial resolution of some issue and better to permit the parties to avoid unacceptable risks. *Holiday Acres*, 271 N.W.2d at 448–49. In *Holiday Acres*, the Minnesota Supreme Court found jurisdiction to decide a real estate owner's declaratory judgment challenge of the application of a "due-on-sale" clause in its mortgage to a prospective sale of the property. The court did not require the mortgagor to attempt to sell without complying with the clause before seeking a declaration of the clause's validity. Citing an Illinois case deciding a like question, the court held that declaratory judgments are "ideally" appropriate when withholding judgment would present a claimant with an impossible choice between proceeding without a determination of her rights and accepting an unsatisfactory status quo:

> [T]hese facts present an ideal situation for use of declaratory judgment proceedings prior to execution of the proposed agreement. Plaintiff claims the right to assign its interest * * *. This claim is countered by defendant's asserted right to foreclosure under the "due on conveyance" clause. To require plaintiff to enter into a contract with the buyer as a condition precedent to judicial review would, in our opinion, place plaintiff in the untenable position of being obliged to choose between foreclosure by defendant and a potential action for breach of contract by the buyer. Surely the modern remedy of declaratory judgment should be available to assist liti-

gants to avoid this type of Scylla–Charybdis situation.

*Id.* (quoting *Amos v. Norwood Fed. Sav. & Loan Ass'n*, 47 Ill.App.3d 643, 646, 7 Ill.Dec. 772, 775, 365 N.E.2d 57, 60 (1977)).

This case presents a *Holiday Acres/Amos* situation. Appellants Rust and GME stand like the mortgagees in those cases, concerned not for the sanctity of the court's jurisdiction, but for obtaining an advance attack on and perhaps altogether preventing the opportunity of respondents to settle, adding to appellants' adequate options to contest respondents' settlement in further proceedings. *See, e.g., Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982) (proponents of contested settlement agreement must prove the agreement is "reasonable and prudent"); *Johnson v. Moberg*, 334 N.W.2d 411, 415 (Minn.1983) (settlement agreements between some parties involved in litigation must be disclosed to all parties immediately).

Other cases have agreed with *Holiday Acres* that courts may declare the rights or legal status of parties prior to the disintegration of their relationship by breach of contract and prior even to the formation of a contract. *See Culligan Soft Water Serv. of Inglewood v. Culligan Int'l Co.*, 288 N.W.2d 213, 215–16 (Minn.1979) ("The policy behind the creation of declaratory judgments is to allow parties to determine certain rights and liabilities pertaining to an actual controversy before it leads to repudiation of obligations, invasion of rights, and the commission of wrongs."); *Harrington*, 235 Minn. at 441, 51 N.W.2d at 73 ("[A] contract may be construed [by declaratory judgment] either before or after there has been a breach thereof."); *Fed'n of Men Teachers*, 238 Minn. at 157, 56 N.W.2d at 205 (court may decide validity of proposed contract; jurisdiction exists to decide a declaratory judgment action "although the [s]tatus quo between the parties has not yet been destroyed or impaired").

### III.

■ We are mindful of the fact that the parties are presently involved in litigation commenced by Rice Lake after the city refused to pay for a cost increase. But the controversy with Rust and GME does not involve an issue that must be resolved in that litigation. Rice Lake and the city have not reached a settlement that alters the interests of the parties in the pending litigation.

There is another dimension to the fact that the parties are involved in pending litigation and that the "ripening seeds" of controversy involve a settlement that would reduce the complexity of this litigation. The "ripening seeds" standard is especially lenient and declaratory judgment especially appropriate in the settlement of conflicts between parties involved in litigation. *Holiday Acres*, 271 N.W.2d at 449 (noting that "prospect of lengthy litigation" adds to appropriateness of declaratory judgment). Minnesota law favors settlements because of the opportunity they present to avoid or simplify litigation. *Eggleston v. Keller Drug Co.*, 265 Minn. 78, 81–82, 120 N.W.2d 305, 307 (1963) ("It is settled in this state that good-faith settlements are favored and are presumed to be valid."); *Beach v. Anderson*, 417 N.W.2d 709, 712 (Minn.App.1988) ("reliance on * * * settlements should be encouraged" to advance the "efforts of trial courts to hear and determine [an] ever-increasing number of cases" (quoting *Eggleston*, 265 Minn. at 82, 120 N.W.2d at 307)); *Skalbeck v. Agristor Leasing*, 384 N.W.2d 209, 212 (Minn.App.1986) ("Settlement agreements are presumed to be valid in Minnesota."). Settlement in this case would simplify the lawsuit, removing from trial a dimension of the parties' dispute. As respondents argue, courts frequently use partial summary judgments to eliminate issues from unwieldy litigation; we see more significant cause to employ the declaratory judgment statute, "liberally construed," to deal with a settlement arrangement that simplifies the litigation yet does not involve piecemeal dealings with issues involved in the dispute.

Finally, the pending litigation leads us to reflect on the deference that occasionally may be due to the trial court in its determination of a matter of law. As noted before, the declaratory judgment statute is remedial and is to be liberally construed. To decide judiciability and the ripening seeds of controversy, there must be a measure of the affects

of court action on the parties. And when the parties are already engaged in litigation, the trial court must measure the affects of a declaratory judgment proceeding on the interests of the parties that are at stake in the pending matter. This determination involves an assessment of equitable interests that begs for limiting our independence in reviewing the trial court's decision on the law. *See,* e.g., *Bechtel v. Robinson,* 886 F.2d 644, 647 (3rd Cir.1989) (on trial court summary judgment, giving deference to trial court discretion in assessing equitable considerations).

## IV.

Evidently recognizing the importance of the case law on the ripening seeds of controversy, appellants concede that courts in some cases appropriately decide disputes without requiring the parties, through the formation or breach of a contract, to take the unacceptable risk of cementing legal positions carrying unknown consequences. Nevertheless, appellants argue, such use of the declaratory judgment is inappropriate where, as here, a party openly acknowledges in a written instrument that it will pursue judicial determination of an issue before committing to a course of action. This argument presents a difference without a distinction; there is no meaningful variance between parties stating they must obtain a judicial declaration of some issue, as here, and one party in fact initiating proceedings to obtain such a declaration, as in *Culligan. Culligan,* 288 N.W.2d at 215–216. Indeed, that respondents anticipated the need for judicial intervention strengthens their claim that the "ripening seeds of an actual controversy" are inherent in the parties' current dispute. Respondents are not attempting to engage appellants in hypothetical argument; they genuinely seek settlement and hold a contract that details how in every respect respondents intend to proceed if it does not entail for them an unacceptable risk. *Cf. Izaak Walton League of America Endowment v. State,* 312 Minn. 587, 589, 252 N.W.2d 852, 854 (1977) (where parties enter contract "less with the intent that it be performed than with the purpose of creating a vehicle by which [to] gain a judicial statement regarding" a general principle

of law, no jurisdiction to construe the contract).

Appellants assert "[n]o case authorizes the court" to rule on the effect of a "not-yet-binding" or "conditional" agreement. This statement misconstrues *Culligan,* where the Minnesota Supreme Court construed a conditional contract, and *Fed'n of Men Teachers,* where the court determined the validity of contracts not fully formed. *Culligan,* 288 N.W.2d at 216 ("whether or not the * * * agreement is absolute or conditional" declaratory judgment jurisdiction is appropriate); *Fed'n of Men Teachers,* 238 Minn. at 158, 56 N.W.2d at 206 (declaratory judgment construing contract's validity proper before claimants even asked to sign contracts). Further, appellants elect to overlook *Holiday Acres,* which holds that the "ideal * * * use of declaratory judgment proceedings" is to settle a claimant's rights before the claimant is forced to assume an "unwarranted and unrealistic" contractual obligation. *Holiday Acres,* 271 N.W.2d at 448.

Appellants consider significant the fact that the declaratory judgment provision of respondents' settlement agreement was framed as a condition "precedent" to the agreement, inviting respondents to argue it was something else. We see no significance in the character of the condition created by respondents' provision. The important determination is that respondents' settlement is not a pretended contract as in *Walton* and other cases where courts have declined to exercise jurisdiction. *Cf., e.g., Walton,* 312 Minn. at 589, 252 N.W.2d at 854 (no jurisdiction to decide contrived contract dispute where parties' goal was to have general principle of law settled).

## DECISION

Appellants propose that we disregard precedents and instead declare the law consistent with their interests. This we cannot do. Appellants and respondents directly dispute the "immediate" and actual question of whether respondents' settlement agreement extinguishes the city's third-party claims against appellants. Thus "ripening seeds" of conflict between the parties are evident and the court may settle the parties' uncertainty

with respect to their legal positions. Respondents are not required to take the "unwarranted and unrealistic risk" of finalizing their settlement agreement without having its legal effect upon the city's claims determined.

**Affirmed.**

SHORT, Judge, dissenting.

I agree a live controversy exists; while the appellants contend the settlement agreement provides them with an affirmative defense to the underlying litigation, the respondents argue its only effect is to discharge the city's liability in that suit. However, I respectfully dissent because the trial court cannot properly hear a declaratory action that raises issues which can be decided in the same parties' underlying lawsuit. *Trimble v. City of Prichard,* 438 So.2d 745, 746 (Ala.1983); *Turnpike Farm Ltd. Partnership v. Curran,* 316 Md. 47, 557 A.2d 225, 226 (1989); *Becton v. State,* 506 S.W.2d 137, 139 (Tenn.), *cert. denied,* 419 U.S. 847, 95 S.Ct. 83, 42 L.Ed.2d 76 (1974); *Stop 'N Go Markets of Texas, Inc. v. Executive Sec. Sys., Inc. of Am.,* 556 S.W.2d 836, 837 (Tex.Civ.App.1977). Allowing this declaratory action to go forward essentially detaches an evaluation of potential affirmative defenses from the underlying litigation, encourages piecemeal resolution of disputes, and disrupts the natural trial process by opening a back door to interlocutory appeals. *See Hitchcock Properties, Inc. v. Levering,* 776 S.W.2d 236, 239 (Tex.Ct.App. 1989) (holding a defendant improperly attempted to make his affirmative defense the subject of a separate declaratory action), *error denied* (Tex. Dec. 20, 1989); *Stop 'N Go Markets,* 556 S.W.2d at 837 (quoting *United Servs. Life Ins. Co. v. Delaney,* 396 S.W.2d 855, 858 (Tex.1965), for the proposition that declaratory actions are not a vehicle for the piecemeal litigation of claims); *see also Curran,* 557 A.2d at 226 (noting the plaintiff improperly filed a separate declaratory action instead of a motion in the underlying suit because it desired the opportunity for an immediate appeal of the trial court's ruling on the issue). Therefore, I would not permit the separate declaratory action to continue, but would require the trial court to resolve the settlement agreement's effect on the underlying lawsuit pursuant to an appropriate motion made within the context of those proceedings. *Cf. Becton,* 506 S.W.2d at 139 (approving the trial court's decision to treat an improper declaratory action as an amendment to a petition in the underlying litigation).